**UNISTRUT CORPORATION et al.,
Plaintiffs, Appellants,**

v.

**James F. POWER et al., Defendants,
Appellees.**

**James F. POWER et al., Defendants,
Appellants,**

v.

**UNISTRUT CORPORATION et al.,
Plaintiffs, Appellees.**

**Nos. 5541, 5542.**

United States Court of Appeals
First Circuit.

June 30, 1960.

Cedric W. Porter, Boston, Mass., with whom Roscoe O. Bonisteel, Ann Arbor, Mich., Porter, Chittick, & Russell, Boston, Mass., and Bonisteel & Bonisteel, Ann Arbor, Mich., were on brief, for Unistrut Corp. et al.

Arthur D. Thomson, Boston, Mass., with whom Edward R. Bonitz, Belmont, Mass., was on brief, for James F. Power et al.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This is a diversity action brought by Unistrut Corporation, hereinafter called plaintiff, a Michigan corporation, and its principal officer, Charles W. Attwood. The defendants are James F. Power, a citizen of Massachusetts, hereinafter called defendant, and Power Products Company, Inc., his New England distributor. The complaint charges (1) unfair competition; (2) infringement of Patent No. 2,345,650, issued to Attwood on April 4, 1944, and Attwood Patent No. 2,696,139, issued December 7, 1954; (3) trade-mark infringement of plaintiff's Unistrut trade-mark by defendant's trade-mark Power-Strut; (4) copyright infringement of two of plaintiff's catalogs; and (5) breach of contract by defendant's continued use of the term Unistrut after his distributorship had been terminated by the plaintiff. The district court found for the plaintiffs with respect to unfair competition, infringement of the '650 patent and of one catalog, and breach of the distributorship contract, and for the defendants on the other issues. It entered an injunction, and reserved the question of damages. Plaintiffs appeal because of dissatisfaction with the scope of the injunction with respect to unfair competition, and for failure of the court to find for them on, and thus include provisions respecting, the other issues. Defendants have filed a cross-appeal as to the '650 patent and the violation of the distributorship agreement, and also from an order awarding costs and counsel fees to the plaintiffs.

In the late 1930's the plaintiff developed commercially an adjustable framing system consisting of a metal channel,

which could be cut to desired lengths with a hacksaw, with a continuous open slot for the insertion of nuts to which fasteners of various types could be attached. This longitudinal slot permitted precise adjustment of the fasteners without the necessity of boring holes. Low material and erecting costs, and extreme versatility, led to extensive commercial success. Plaintiff obtained distributors on a national basis, one of whom was defendant. By the 1950's plaintiff's annual sales to defendant alone exceeded $250,-000. In 1954 defendant decided to leave the plaintiff, and go out on his own. He persuaded a number of plaintiff's other distributors to become his distributors. His product was highly similar to, and in all respects interchangeable with, the plaintiff's. The only differences related to the flanges or inner edges of the channel, and to the fact that it bore the name Power-Strut rather than Unistrut. However, even as to this last, the court found that the defendant took quite inadequate precautions to indicate that Power-Strut came from a different source, and that by trading upon the manifest similarities, and his special position as plaintiff's former distributor, the defendant unfairly competed, and obtained, at the least, what might be termed a "running start" at plaintiff's expense. The district court expressed the matter simply: the defendant was "dishonest."

*Unfair Competition—Introduction*

While defendant does not agree with the court's conclusion, he concedes that the evidence warranted some finding of unfair competition, and it is not he, but the plaintiff, who appeals from the injunction in this respect. Plaintiff alleges that the injunction is insufficiently broad, and insufficiently specific. On analysis, we find that all that this means is that the various activities of the defendant which plaintiff claims to constitute unfair competition were not found by the court to be such as of the time of the issuance of the injunction, regardless of the extent that they may have been a part of, or assisted in furthering such, at an earlier date. Although the matter

of unfair competition is a separate issue from the rest, plaintiff argues that the others are essentially tied into it. Since to a considerable extent we accept this contention, our opinion will follow the same course. Accordingly, we will return to this matter later.

*Patent Infringement (No. 2,345,650)*

Plaintiff, like defendant, employs a four-sided channel, open, or slotted, at the center of what might be termed the top. The metal forming the base turns up at right angles to constitute the two sides, each of which turns again at right angles, proceeding inward for a short distance, and then turns inward again at right angles, continuing down a short distance. The finished shape of these final inturned edges, or flanges, is of importance, and will be hereinafter considered. Special, rectangular, fastening nuts are so designed that they are narrow enough to pass into the channel through the continuous slot or opening between the two flanges, but long enough, when then turned at right angles, to override them. In order to maintain this straddling position, the nut contains two parallel slots spaced to receive the flanges. Tightening the hanger bolt, which passes through the center of the nut, against the base of the channel will press the nut outward against the flanges, locking the bolt in place. Further to assist fixation the bottoms of the slots are serrated so that the teeth will impress themselves into the edge of the flanges, assuring a permanent grip. If it is desired thereafter to move the nut, relaxation of the bolt will release the tension and permit longitudinal sliding of the nut, which can then be reaffixed in a new position. Erection requires nothing but a hacksaw to cut the channels to the desired length, the placing of the nuts by hand, and the use of a wrench to take up on the bolts.

The '650 patent applied to the channel and original nut. In holding that defendant's product infringed, the district court, after pointing out the manifest similarities, stated that there had been a "great deal of testimony about the

shape of the inturned edge of the Power-Strut [defendant's] channels [into which the teeth bit]. The experts disagreed whether the edge was flat or somewhat rounded * * * [I]t is immaterial whether the edge is flat or rounded for I find that the departure from the plaintiffs' design in either case is too superficial to avoid infringement." In order to consider the correctness of this conclusion, we must examine the original Attwood application. After referring to the purposes of the invention, and setting forth a general description, there followed a detailed description of the drawings. In this the inturned edges, or flanges, were described as "beveled to impart a sharpened or pointed cross-section thereto, for the purposes which will presently appear." These purposes were to produce a surface which would more readily accept the teeth at the bottom of the slots in the nut. "When the nut is drawn up tight [the teeth] bite into the pointed extremities of the flanges and * * * assist in retaining the nut in position by positively locking it against longitudinal sliding movement, the nut being hardened, or formed of harder stock than the strut." While the specifications referred to these beveled or pointed edges as the "preferred form," no mention was made of them in any of the original sixteen claims. All of these claims were "rejected on Awbrey in view of Jordahl."

Awbrey, Patent No. 1,933,536 was for a single metallic insert, having a serrated nut, to attach a bolt to concrete. Jordahl, Patent No. 1,155,243, was for a channel of unlimited length for a similar purpose. The combination of the two was at least arguably close to claims 1–16 of Attwood In any event, Attwood accepted the examiner's position. Upon this rejection he added claims 17–19. These claims incorporated somewhat, but only somewhat, the specifications originally referred to as the preferred form, by providing that the edges of the flanges should be "substantially beveled." In support of this as constituting invention, Attwood stated, "the beveled or pointed edges of the flanges assist in thus minutely adjusting the distances between adjacent securing elements and * * * will serve to more effectively secure the desired 'bite' in the flanges." "These new claims point out marked differences between applicant's arrangements and those in the references, particularly with relation to the beveled flanges and cooperating 'bite' securing members." Even as thus limited, these further claims were rejected. Attwood thereupon amended the specifications with respect to the nut. He provided that "the sidewalls 16b of the slots 16 are inclined and diverge outwardly and upwardly from the bottom of the slots * * *." At the same time he submitted two more claims—20 and 21, which eventually became claims 1 and 2, the sole allowed claims of the patent. These, at last, fully incorporated the "preferred" specifications, and provided for "longitudinal ribs each *beveled* at the edge portion *to a pointed cross-section*," (italics ours) and provided, further, that the nuts should have "tapered slots each having inwardly converging sidewalls." It is inescapable that all of these limitations were reluctantly, but consciously, adopted for the purpose of obtaining the patent and for no other reason.

In seeking to uphold the finding of infringement by the district court plaintiff states in its brief that the defendants *"are using rounded or beveled edges, and they are using them for exactly the same purpose plaintiffs' beveled edges! * * the defendants do not use a square edge on their inturned portions, like Jordahl * * * or Awbrey!* Instead defendants use a *definitely rounded edge*, ranging to a * * * radius equal to the width of the material."* (Ital. in original). Pausing here, plaintiff has decided in its favor a conflict in the evidence which the court, as previously pointed out, failed to resolve. Plaintiff makes a further contention, required by the fact that, as finally limited, its patent uses not only the word "beveled" (with which it has *gratuitously* equated "rounded"), but the further word "pointed." Plaintiff

says, "Any point on the arc of a circle [defendant's alleged rounded edge] is still a *pointed edge* because a flat surface, like the teeth at the bottom of the grooves touch it only at the point. Defendants have blunted their edge somewhat—their edge is not beveled quite as much as much as plaintiffs'—but * * * [t]he difference is one merely of degree—as plaintiffs' sketches above show." (ital. in original).

The purpose of a beveled and pointed edge, as plaintiff's file history abundantly discloses, is to increase the susceptible bearing surface impinged by the teeth in the slots or grooves of the nut, the only improvement that was recognized as invention by the Patent Office. What this means, in practical application, is described in plaintiff's advertising, which illustrates and describes the Unistrut device as having "pyramided edges." "This pyramid shaped edge has ⅓ more bearing surface than ordinary flat-edged channel and flat-surfaced nut." Since plaintiff charges defendant with "difference * * * merely of degree," we observe that even if defendant's edge had the maximum rounding charged by plaintiff, viz., with a "radius equal to the width of the material," defendant's resultant additional bearing surface over a flat-edged surface, rather than being plaintiff's advertised ⅓, would be less than ½₀.* We have no reason not to consider this as a *de minimus* departure from flatness.

■ We cannot accept plaintiff's description or characterization of defendant's device. Nor can we agree with plaintiff's statement that it is "not attempting to expand claims 1 and 2 to leave them identical with an abandoned claim." In contending that defendant's slightly rounded device is beveled and pointed "within the claims of the patent," and having also in mind that this is a two-part patent, and that the slot in defendant's nut is not even suggested to have inclined walls, we find that plaintiff is trying to reclaim exactly what, in the course of processing the patent, was surrendered. We agree, for the reasons stated above, with the district court that it is immaterial whether defendant's edge was "flat or somewhat rounded," but with the reverse connotation. In view of the extensive file history, it is impossible to accept the finding of equivalence. It follows that Patent No. 2,345,650 is not infringed.

*Patent Infringement (No. 2,696,139)*

■ The court found Patent No. 2,-696,139 (for a new nut) invalid by reason of prior publication in a bulletin, and public use within the meaning of 35 U.S.C. § 102(b). It is possible that we might disagree with the court's apparent conclusion that the bulletin language described this nut sufficiently to constitute disclosure, standing alone, but we cannot say that the court was plainly wrong in its finding of public use. Hence the finding of invalidity must stand. Defendant is no longer infringing this patent, although it admittedly once did, and therefore the matter is perhaps not too important, as it is still open to the court to consider past copying in connection with plaintiff's general claim of passing off.

*Trade-mark Infringement*

■ The plaintiff has a registered trade-mark, Unistrut. The defendant, whose name is Power, has adopted the name Power-Strut. The district court found this not to be an infringement. The word "strut" is generic as applied to members such as these strips. Nothing makes this clearer than the recitals

---

* The computation is as follows. Taking the width of the material, or flat end, (w), and the equal radius (r) of the arc, to be 1, (w) is the base of a triangle each side of which is (r). Since (w)= (r), this is an equilateral triangle. The arc segment, accordingly, would be 60°. Consequently the arc length would be $\frac{2\pi r}{6}$, or $\frac{\pi r}{3}$. Since (r) = (w) = 1, the length of the arc = $\frac{3.1416}{3}$ = 1.047, a less-than-5% increase over (w).

in Attwood's own application for the '650 patent. Nor was plaintiff the only one that included this word in its trade name. While plaintiff states that none of its competitors "find it necessary" to use the word "strut," the record discloses that adjustable framing very similar to plaintiff's is sold under the name Proctor-Strut. It also appears that another manufacturer, who used a tubular, rather than an open channel, used the name Tube-Strut. Even apart from such other use, plaintiff's mark may be thought to be essentially weak. We have no disposition to reverse the findings of non-infringement. See Esquire, Inc. v. Esquire Slipper Mfg. Co., Inc., 1 Cir., 1957, 243 F.2d 540.

*Copyright Infringement*

■ The plaintiff claims infringement of its copyrighted catalog No. 700, which violation was fully established. It also claimed infringement of its catalog No. 3. This catalog was originally copyrighted in 1942 by proper filing in the Copyright Office. The only copy of catalog No. 3 introduced at the trial was the 1943 edition, which admittedly contained some, unspecified, additions. This edition was clearly shown to have been pirated. However, there was no proof that copies of this later edition were deposited with the Copyright Office, and there was no proof that the infringed material was contained in the 1942 edition. We do not reach the question of whether the copyright of the 1942 edition was lost by republication in an enlarged uncopyrighted edition. Plaintiff's case fails for want of proof.

*Breach of Contract*

■ The defendant had a distributorship contract executed in 1952, which was terminable on 30-days notice by either party. In 1953 the parties executed a new contract which differed in no respect except to limit defendant's right to use the word "Unistrut" in case of termination. Defendant's defense to a claim of a violation of this new provision is that in view of the 1952 contract, which was never officially terminated, the re-

striction imposed in 1953 was without consideration. Plaintiff replies that if defendant had not accepted the new provision, it could have terminated the 1952 agreement at that time. We agree with the district court that under these circumstances defendant's contention does not merit discussion.

*Unfair Competition—Conclusion*

■ We agree with defendant, of course, that the fact the district court made the injunction less broad than it might have is not a matter for review unless we are satisfied that there was an abuse of discretion. See Esquire, Inc. v. Esquire Slipper Mfg. Co., Inc., supra at page 545. We perceive no abuse. The established unfair competition commenced in 1954. Many aspects of it were voluntarily discontinued by stipulation entered into in November 1955. The final injunction was not issued until December 1958. An injunction looks toward the future. Without pausing to discuss the particular terms and the alleged short-comings of this one, we merely observe that the court could properly have been satisfied that by this date no more relief was needed than the amount that was provided. What may constitute wrongful passing off at one date may cease to be such if and when it becomes apparent that the public has ceased to be deceived. It is true that under some circumstances an injunction may cover matters not immediately threatened. Cf. Esquire, Inc. v. Esquire Slipper Mfg. Co., Inc., supra, (trademark). But here no question of a decision not being res judicata will arise, as was feared in Esquire, for damages will be awarded in any event. We accept the court's determination not to include in the injunction misconduct which had already terminated.

■ The error in plaintiff's overbroad interpretation of unfair competition is illustrated by its contention that defendant should not be allowed to paint its product green because the majority of plaintiff's sales are made in that color. Apparently green is a popular color, in-

asmuch as both parties offer others, but with relatively few buyers. But plaintiff can have no legal objection to defendant's use of any particular color in the absence of a showing that such use assists in creating, or creates a substantial possibility of confusion of source. Instead, plaintiff seems, fundamentally, to be objecting to defendant's use of the color green simply because plaintiff made it popular, or because defendant's use permits it to sell parts more acceptably interchangeable with plaintiff's, regardless of any confusion.

### Counsel Fees

■ The judgment of the district court provided that the defendants should pay "the costs of this action as determined by the Clerk of the U. S. District Court, and a reasonable attorneys' fee in an amount to be determined by the Master on evidence presented in the accounting." The defendants have appealed. There is considerable doubt as to the extent that this question is presently before us. Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 6 Cir., 1941, 119 F.2d 316, reversed on other grounds, 1942, 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381; Cohan v. Richmond, 2 Cir., 1936, 86 F.2d 680; but cf. Newton v. Consolidated Gas Co., 1924, 265 U.S. 78, 83, 44 S.Ct. 481, 68 L.Ed. 909. We shall merely remark that we question whether the determination of counsel fees was a proper matter to send to a master; the more particularly without instruction as to what effect was to be given to the fact that on certain issues—now increased in number—the plaintiffs were not successful. Cf. J. L. Owens Co. v. Twin City Separator Co., 8 Cir., 1909, 168 F. 259, 270. On the other hand we do not agree with the defendant that his voluntary acceptance of some of plaintiff's demands made any award of counsel fees improper. Corcoran v. Columbia Broadcasting System, Inc., 9 Cir., 1941, 121 F.2d 575.

Judgment will be entered vacating the judgment of the District Court with respect to infringement of Patent No. 2,-345,650, and affirming the judgment in all other respects, except as to counsel fees. Costs in this court to the defendants, as the substantially prevailing parties.