**BURGER KING OF FLORIDA, INC., a Florida corporation, and Burger King Restaurants, Inc., a Florida corporation, Plaintiffs and Cross-Defendants,**

**v.**

**Marlin J. BREWER and wife, Meredith L. Brewer, individually and d/b/a Whopper Drive-Inn, Defendants and Cross-Plaintiffs,**

**Civ. A. No. 5384.**

United States District Court
W. D. Tennessee, W. D.
July 7, 1965.

G. Wynn Smith, Jr., Canada, Russell & Turner, Memphis, Tenn., John R. Swindler, Irons, Birch, Swindler & McKie, Washington, D. C., for plaintiffs.

H. L. Feibelman, Feuerstein, Feibelman & Kaminsky, Memphis, Tenn., for defendants.

BAILEY BROWN, District Judge.

The original plaintiffs, Burger King of Florida, Inc. and Burger King Restaurants, Inc., both Florida corporations, with principal places of business in, respectively, Jacksonville and Miami, filed this action against the original defendants, Marlin J. Brewer and wife Meredith L. Brewer, a partnership, with place of business in Memphis, Shelby County, Tennessee. In this action, plaintiffs claim that defendants are guilty of unfair competition by infringing their drive-in restaurant service mark "Home of the Whopper" and their hamburger trade mark "Whopper" and seek declaratory and injunctive relief. The defendants have filed an answer denying such infringement. They have also filed a counterclaim against plaintiffs, seeking declaratory relief, and have filed a third party claim against B. K. Restaurants of Memphis, Inc., a Tennessee corporation with principal place of business in Memphis, and against Richard Sloan, a resident of Memphis, seeking declaratory and injunctive relief. In their counterclaim and third party claim, Mr. and Mrs. Brewer contend that the adversary parties are infringing their hamburger trade mark "Whopper Burger" and their drive-in restaurant trade name "Whopper Drive-in."

This cause was tried before the Court without a jury, and this memorandum decision is filed in lieu of findings of fact and conclusions of law. Rule 52 (a).

Plaintiff Burger King Restaurants, Inc. in March, 1961, acquired from plaintiff Burger King of Florida, Inc. its rights in all of its trade marks, trade names and service marks, including "Whopper" and "Home of the Whopper," and therefore, for purposes of this litigation, we may treat these corporations as one and will refer to them as "Burger King."

Burger King began its operations in Florida in 1953 when it opened its first drive-in restaurant featuring the hamburger. From this start, it grew into a large chain of drive-ins, so that, by 1960, it consisted of about 50 restaurants located in the southeastern states and by 1965 consisted of well over 100 restaurants in the southeastern, midwestern, southwestern and western states. The chain now has and always has had many more units in Florida than in any other state and now has and has always had many more units in the southeastern states than any other group of states. This expansion has generally occurred by the granting of franchises, the franchise holders using the trade marks and names and service marks of Burger King. From the beginning, the chain has called its restaurants "Burger King," its signs

and advertising representing a king sitting on a hamburger and holding a milk shake.

Burger King sells its franchises for a substantial amount of money and also receives a royalty on subsequent food sales. The franchise holder, in turn, receives initial training in the standard method of operation, aid in the location and plans for the construction of the building, the standard equipment to be used, the right to buy certain consumable items from Burger King suppliers, and supervision and help in the establishment and operation of the drive-in. At the present time Burger King is spending over one million dollars per year on advertising, though none is being done in Tennessee. There are substantial advantages for the owners of these franchises in operating as a part of this chain. Among these are the cost saving with respect to certain supplies, the aid and supervision that Burger King affords, and the attraction of customers by virtue of being a part of an organization whose identity, service and food are widely known.

In 1955, Burger King granted a franchise to Burger King of East Tennessee, Inc., covering principally the state of Tennessee. Subsequently, that corporation established or sub-franchised six units in Tennessee, two owned by it at Knoxville and single sub-franchises at Bristol, Chattanooga, Nashville and Memphis. From the time it acquired the Tennessee franchise until around 1958, it advertised throughout the state in an effort to interest persons in opening new drive-ins. The unit at Nashville failed and in 1957 the unit at Memphis also failed. In 1963, Burger King of East Tennessee sold its units at Knoxville, which thereafter did not carry the name. The units at Bristol and Chattanooga have continued under the name "Burger King" from the mid-fifties to the present times.

In 1958, Burger King began to feature a large hamburger which it called a "Whopper," sold in wrappers and sacks with this name thereon, and to place "Home of the Whopper" signs, in addition to the "Burger King" signs, on the drive-ins. Concurrently with the adoption of this trade mark and this service mark, it devised a new and efficient machine for cooking these hamburgers and to advertise that it gave "sixty second service." Burger King of East Tennessee, with respect to its two units in Knoxville, and its sub-franchise holder at Chattanooga, in 1960, began the use of the trade mark "Whopper" and the service mark "Home of the Whopper"; this was continued at Knoxville until the two units were sold in 1963 and continues to the present in Chattanooga. The sub-franchise unit at Bristol has not used these marks.

In 1961, the sub-franchise holder in Chattanooga, one Spivey, ceased to pay royalty on sales to Burger King of East Tennessee, apparently because it then became necessary for him to replace the equipment which had originally been sold to him. In 1963, Burger King of East Tennessee sold back to Burger King its franchise rights in Tennessee, subject to the rights of the existing sub-franchise holders in Bristol and Chattanooga. No mention of "Whopper" or "Home of the Whopper" is made in the agreement. Concurrently, Spivey, in Chattanooga, made an agreement with Burger King wherein his right to continue to operate his drive-in without royalty until the 10-year sub-franchise expired was recognized and he released his right to establish other drive-ins in that city. No mention was made of "Whopper" or "Home of the Whopper" in the agreement, but Spivey continued to use these marks and to buy from Burger King suppliers and considered himself a franchise holder.

In 1960, Mrs. Brewer's father and her brother had been for some years in the drive-in restaurant business in Memphis, and in that year her sister and her sister's husband, Mr. and Mrs. Moore, opened a drive-in restaurant in Memphis. It featured hamburgers, and they called it the "Kingburger" drive-in. Shortly prior to July, 1961, Mr. and Mrs. Brewer,

the original defendants here, also decided to open a drive-in restaurant in Memphis. They conferred with members of the family concerning the problems involved. Ultimately Mrs. Brewer's father and brother loaned them money to establish their restaurant. In July, Mr. Brewer, for training, worked in the brother's drive-in restaurant. There had been stories about the Burger King "Home of the Whopper" operations in two national trade magazines which the publishers attempt to distribute to all drive-ins and are distributed free. These stories were in the issues of October, 1959 and March, 1960, and in July, 1961, there was another story about Burger King in a third such trade magazine. Trade magazines of this general nature were available in the brother's restaurant. There were then over 50 Burger King restaurants in existence. Mr. Brewer testified, however, that he did not then know of the use of "Whopper" or "Home of the Whopper." He testified that with Mrs. Brewer, while driving his automobile in Texas about that time, he heard an announcement on the radio that someone had caught a large bass in a nearby lake which the announcer referred to as a "Whopper," and that he then and there decided to use the name on his planned restaurant. In September, 1961, the Brewers applied for and obtained a Tennessee trade mark on the name "Whopper Burger" to use as a name for hamburgers, and in November, 1961, opened their drive-in restaurant which they called the "Whopper Drive-in." The Brewers have since operated the restaurant under that name and have referred to their featured large hamburger as a "Whopper Burger." (They do not actually print this name on the wrappers and sacks used in selling these hamburgers, and therefore, strictly speaking, it is not being used as a trade mark.) They have advertised their restaurant (ten thirty-second spot announcements) on a Memphis radio station, whose signal is heard in at least four states other than Tennessee. Their restaurant is listed in the white pages and

they advertise in the yellow pages of the Memphis telephone directory, which has been distributed to those who desire it in nearby West Memphis, Arkansas. Their restaurant is also listed in the Memphis section of the white pages of the West Memphis directory, though they did not authorize or pay for it.

In February, 1964, B. K. Restaurants of Memphis was incorporated, Sloan being a principal stockholder. These are the third party defendants. It obtained a franchise from Burger King covering Shelby County, Tennessee (in which Memphis is located), Crittenden County, Arkansas, and DeSoto County, Mississippi. Thereafter, it began the construction of a typical Burger King type restaurant in Memphis, using the sign "Burger King" with the representation of the king sitting on a hamburger and also using the sign "Home of the Whopper." Before the building was completed, however, Mrs. Brewer's brother-in-law, Mr. Moore, who operated the "Kingburger" drive-in nearby, sued B. K. Restaurants of Memphis, and Sloan, who was to be the manager, in the Chancery Court of Shelby County and obtained an injunction against the use of the trade name "Burger King." Accordingly, since the restaurant opened in October, 1964, it has used the name "Jolly King" but with the king sitting on a hamburger. This decree is now on appeal. After the opening of the B. K. Restaurants of Memphis drive-in, counsel for the Brewers wrote a letter demanding that it also cease using the name "Whopper" and threatening suit if it did not comply. This action followed receipt of that letter.

There seems to be no question but that there is a likelihood of confusion of the trade mark and service mark of Burger King, "Whopper" and "Home of the Whopper," with the trade mark and trade name of the Brewers, "Whopper Burger" and "Whopper Drive-in." This is true, if for no other reason, because the very theory of all of the parties hereto is that there is a likelihood of confusion. Moreover, there is no question

but that the drive-in operated by B. K. Restaurants of Memphis has had customers who were attracted to it because the customers had dealt with Burger King "Home of the Whopper" restaurants in other cities.

Burger King obtained, after the filing of this action, federal registration of the service mark "Home of the Whopper" for drive-in restaurant services on the principal register in January, 1965, and the registration shows that it was applied for June 6, 1960, shows first use on January 12, 1956 and shows first use in interstate commerce during August, 1958.

In general, it is the contention of Burger King, Burger King Restaurants of Memphis and Sloan that Burger King used the trade mark "Whopper" and the service mark "Home of the Whopper" in interstate commerce and in many states prior to the use of the similar trade mark and trade name by Mr. and Mrs. Brewer, that both Burger King and the Brewers are in interstate commerce, that therefore Burger King and B. K. Restaurants of Memphis are entitled to the protection and the remedy afforded by Sec. 43(a) of the Lanham Act (Title 15, Sec. 1125(a), U.S.C.A.), that this provision is the basis for a federal common law of unfair competition which has evolved, and that under the federal law they have the sole right to use their trade mark and service mark in Shelby County, Tennessee and that the Brewers should be enjoined from using their similar mark and name. They rely on their registered service mark only to the extent that it creates a presumption that they first used the mark in interstate commerce in 1958, which fact is stated on their service mark certificate, but there is really no dispute about this fact.

In general, it is the contention of Mr. and Mrs. Brewer that, because they used their trade mark "Whopper Burger" and their trade name "Whopper Drive-in" in Shelby County, Tennessee and obtained their Tennessee registered trade mark "Whopper Burger" prior to the use there of the similar trade mark and service

mark by adversary parties, they have, by virtue of the Tennessee common law and statutes, the sole right to use their trade mark and trade name in this county. The Brewers further contend that Sec. 43 (a) (Title 15, Sec. 1125(a), U.S.C.A.) of the Lanham Act is not applicable here because their drive-in restaurant has not been in interstate commerce and that, in any event, under the federal law protection will not be afforded to adversary parties in Shelby County under these facts and circumstances.

Under Sec. 39 of the Lanham Act (Title 15, Sec. 1121, U.S.C.A.), jurisdiction is vested in the District Courts of all actions arising under the Act.

 Our first question is whether Burger King and Burger King Restaurants of Memphis are entitled to invoke Sec. 43(a) of the Act (Title 15, Sec. 1125(a), U.S.C.A.), which reads in part as follows:

> "Any person who shall * * * use in connection with any goods or services * * * a false designation of origin * * * and shall cause such goods or services to enter into commerce * * * shall be liable to a civil action by any person * * * who believes that he is or is likely to be damaged by the use of any such false description or representation."

Their right to invoke these provisions therefore depends, it will be seen, on whether the drive-in restaurant of the Brewers has been in interstate commerce. The Brewers contend that it has not because their product has not moved in interstate commerce. We believe, however, that it has been in interstate commerce. Sec. 45 of the Lanham Act (Title 15, Sec. 1127, U.S.C.A.) defines "commerce" as " * * * all commerce which may lawfully be regulated by Congress" and further provides that it is the intent of Congress " * * * to protect persons engaged in such commerce against unfair competition * * *." Moreover, the Brewers' use of this trade mark and trade name has had or will have a substantial economic effect on

Burger King which admittedly uses its trade mark and service mark in interstate commerce. (With respect to economic effect, there is not much evidence of past actual confusion, but likelihood of confusion is conceded and, in addition, the instant suit of the Brewers would, if successful, have a severe economic effect on the Burger King operation in Memphis.) A purely intrastate business is in interstate commerce for purposes of Sec. 43(a) of the Lanham Act if it has a substantial economic effect on interstate commerce. Stauffer v. Exley, 184 F.2d 962 (9th Cir. 1950), Pagliero v. Wallace China Co., 198 F.2d 339 (9th Cir. 1952), Pure Foods, Inc. v. Minute Maid Corp., 214 F.2d 792 (5th Cir. 1954). Tiffany & Co. v. Boston Club, Inc., 231 F. Supp. 836 (D.C.Mass.1964). It is true that American Auto. Ass'n v. Spiegel, 205 F.2d 771 (2nd Cir. 1953) holds to the contrary, but that is definitely a minority view. Alternatively, an additional reason why the Brewers have been in interstate commerce is that the advertising done by them places them in interstate commerce. Tiffany & Co. v. Boston Club, Inc., supra, and cases cited therein. Accordingly, Burger King and Burger King of Memphis are entitled to invoke the provisions of Sec. 43(a).

Since Burger King and Burger King of Memphis are entitled to invoke these provisions, this case is controlled by the federal law of unfair competition. Federal-Mogul-Bower Bearings, Inc. v. Azoff, 313 F.2d 405 (6th Cir. 1963), Pagliaro v. Wallace China Co., 198 F.2d 339 (9th Cir. 1952).

The only remaining question is, therefore, whether under the federal law of unfair competition Burger King and Burger King of Memphis are entitled to prevail or the Brewers are entitled to prevail. The Brewers first used their trade mark and name in Memphis and Shelby County in 1961 while Burger King and Burger King of Memphis did not use their trade mark and service mark here until 1964. However, Burger King and Burger King of Memphis contend that they are entitled to prevail because Memphis and Shelby County were in their natural zone of expansion when the Brewers began operation in 1961.

■ It is true that Spivey, the Chattanooga franchisee, who has used these marks continuously since 1960, has not paid a royalty since 1961, and that Spivey and Burger King did not deal with these marks in the agreement in 1963, but it is also true that he has otherwise operated as a franchise holder and therefore Burger King is entitled to rely on his use as a related company. (Title 15, Sec. 1055, U.S.C.A.) Clearly, the natural zone of expansion would include the entire state of Tennessee. Western Oil Refining Co. v. Jones, 27 F.2d 205 (6th Cir. 1928), Federal Glass Co. v. Loshin, 224 F.2d 100 (2nd Cir. 1955).

■ Moreover, in view of the nature of the business of Burger King, and in view of the growth, size and location of its operations generally and the amount of its activity in Tennessee by 1961, when the Brewers began business, and in view of these same factors after 1961, we believe Memphis was at that time in its natural zone of expansion, whether or not we treat the use of the trade mark and service mark by Spivey in Chattanooga as use by Burger King. Further, the fact that the Brewers knew of the Burger King operation and the use of its trade mark and service mark in 1961 when they began business (which we find they did know), lends further support for this conclusion. Food Fair Stores, Inc. v. Lakeland Grocery Corp., 301 F.2d 156 (4th Cir. 1962), Food Fair Stores, Inc. v. Food Fair, Inc., 177 F.2d 177 (1st Cir. 1949), Sweet Sixteen Co. v. Sweet "16" Shop, Inc., 15 F.2d 920 (8th Cir. 1926).

■ Since we have determined that Burger King and Burger King of Memphis are entitled to prevail under the federal law of unfair competition, it follows that the contentions of the Brewers based on the Tennessee common law of unfair competition and their Tennessee trade mark must give way. It is not, therefore, necessary for the Court to deal with the contention of Burger King

and B. K. Restaurants of Memphis that the Brewers obtained no substantive rights under Tennessee law by their Tennessee registration even if it were valid, and it is also not necessary to consider their contention that this registration is actually void under Tennessee law.

It results that the original plaintiff, Burger King, is entitled to a declaration that it has the exclusive right to use the trade mark "Whopper" and the service mark "Home of the Whopper" in Shelby County and is entitled to an injunction restraining the Brewers from using the trade mark "Whopper Burger" and the trade name "Whopper Drive-in," or similar marks and names, in this County. It also results that the counterclaim and third party claim of the Brewers must be dismissed.