**PIC DESIGN CORP., Plaintiff, Appellee,**

v.

**BEARINGS SPECIALTY CO., Inc.,**
**Defendant, Appellant.**

**No. 7722.**

United States Court of Appeals,
First Circuit.

Jan. 12, 1971.

Ansel B. Chaplin and Peter M. Saparoff, Boston, Mass., with whom Gaston, Snow, Motley & Holt, Boston, Mass., were on the brief, for appellant.

Harold James, with whom James & Franklin, New York City, James H. Grover, and Roberts, Cushman & Grover, Boston, Mass., were on the brief, for appellee.

Before ALDRICH, Chief Judge and McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Plaintiff, a New York corporation, sued defendant, a Massachusetts corpo-

ration, under the common law of unfair competition and also under the Lanham Trademark Act.[1] Both parties submitted affidavits, documentary evidence, extensive memoranda of law and presented oral argument before the district court, but no oral testimony was taken. On September 25, 1970, the court entered a preliminary injunction against defendant, 317 F.Supp. 326, from which it now appeals. *See* 28 U.S.C. § 1292 (1964).

Plaintiff, Pic Design Corporation, is a large distributor of precision instrument components.[2] It was apparently one of the first companies to warehouse a large supply of such components, which it lists in catalogs categorized in great detail as to precision and dimensions. Each catalog item is identified by a specific Pic catalog number. Some of plaintiff's competitors also catalog their products, but they use different catalog numbers. Plaintiff manufactures some of the items it stocks, but many are made elsewhere, usually to plaintiff's specifications and drawings.

Defendant, Bearings Specialty Co., Inc., is a distributor of a broad line of industrial components, including the type of precision instrument components sold by plaintiff. From 1966 until May 26, 1969, defendant acted as an "authorized resale agent" for plaintiff. Under this arrangement defendant was listed as such in plaintiff's catalog. It benefited thereby in the form of increased business but was required to sell Pic products at 20 percent above the catalog price. The arrangement was terminated by mutual agreement after plaintiff decided to phase out its local resale agents and defendant concluded that it was unprofitable to operate on plaintiff's terms.

■ Defendant has conceded that during 1969 most of the orders it received for precision instrument components made reference to plaintiff, either by using the "Pic" name or a Pic catalog number. Defendant filled most of those orders with products purchased from Allied Devices Corporation (Adco), whose president, formerly the head of quality control at Pic, was intimately familiar with Pic's stock. During that period Adco used Pic catalog numbers on its invoices. Products were apparently mailed to customers in plain wrappings marked with Pic catalog numbers, with no identification that they had been sent from Adco rather than Pic. On its face

1. 15 U.S.C. § 1125(a) (1964) provides: "Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

In its complaint plaintiff did not allege explicitly that defendant's actions affected interstate commerce. *See* Samson Crane Co. v. Union National Sales, Inc., 87 F. Supp. 218, 221 (D.Mass.1949), aff'd, 180 F.2d 896 (1st Cir. 1950), but it did allege that it is engaged in interstate commerce and that defendant's actions have adversely affected its business. *See* Burger King of Florida, Inc. v. Brewer, 244 F.Supp. 293, 297–98. (W.D.Tenn.1965); Tiffany & Co. v. Boston Club, Inc., 231 F.Supp. 836, 841 (D.Mass.1964). In addition, affidavits were submitted to prove that on at least two occasions defendant palmed off the goods of a competing New York firm as if they had come from plaintiff. In any event, plaintiff's diversity suit under the common law of unfair competition will afford it the relief it is seeking here.

2. "Precision instrument components" are defined by plaintiff as mechanical components, such as gears, racks, shafts, spacers, etc., which differ from the usual run of gears, shafts and the like in that they are high precision, *i. e.*, correct in dimensions sometimes to as little as a few ten-thousandths of an inch.

this conduct would appear to be "palming off" in its grossest form. *See* Remco Industries, Inc. v. Toyomenka, Inc., 286 F.Supp. 948 (S.D.N.Y.), aff'd, 397 F.2d 977 (2d Cir. 1968);[3] Coca-Cola Co. v. Foods, Inc., 220 F.Supp. 101 (D.S.D. 1963); Timken Roller Bearing Co. v. Leterstone Sales Co., 27 F.Supp. 736 (N.D.Ill.1939).

■ At the outset defendant contends that, before a preliminary injunction can issue, plaintiff has the burden of proving that the Pic name and Pic catalog numbers have acquired a "secondary meaning," *i. e.*, that a buyer using the Pic name or catalog number intends to convey to the seller that he specifically wants a Pic product. Under federal law, however, a registered trademark like "Pic" is "prima facie evidence * * * of the registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate" of registration. 15 U.S.C. § 1057(b) (1964). Furthermore, under Massachusetts law a plaintiff claiming unfair competition may show *either* "palming off" *or* that the features of the product in question have acquired a secondary meaning such that confusion as to its source is likely to arise if defendant is allowed to copy them. Markham v. A. E. Borden Co., 108 F.Supp. 695, 710 (D.Mass.1952), rev'd on other grounds, 206 F.2d 199, 210 (1st Cir. 1953); *see also* Hawley Products Co. v. United States Trunk Co., 259 F.2d 69, 76–77 (1st Cir. 1958); Summerfield Co. of Boston v. Prime Furniture Co., 242 Mass. 149, 136 N.E. 396 (1922). Moreover, plaintiff has clearly satisfied any burden of proving "secondary meaning" by submitting affidavits from the purchasing agents of five of its customers stating that, when they order a Pic product, they expect to receive a product supplied by Pic.[4]

Defendant's sole defense is that there is a trade custom in this industry which permits undisclosed substitutions unless the buyer specifies "no substitutions." The only evidence offered in support of this contention is an affidavit by defendant's president, to wit:

"In my opinion, based on more than five years experience, it is thoroughly understood by most, if not all, purchasing agents doing business with the defendant that—without indicating the substitution—defendant has a right to substitute a fully equal product for the one being ordered unless the customer specifies 'no substitutions.'"

When this statement is examined together with the counter-affidavits of the five purchasing agents mentioned above, it is evident that the district court had ample basis for disbelieving this "trade custom" defense.

■ Defendant cites several cases stating that a preliminary injunction should not be granted on the basis of conflicting affidavits. But in each of those cases the contentions of the opposing parties remained equally credible *after* the affidavits had been submitted. For example, in General Electric Co. v. American Wholesale Co., 235 F.2d 606 (7th Cir. 1956), plaintiff charged that defendant had breached a "fair trade" agreement. In its counter-affidavit, defendant admitted that the agreement had been breached in connection with two sales but averred that those sales had been made inadvertently by a temporary employee and were not part of an ongoing policy or practice. And in Sims

---

3. In *Remco* the court defined "palming off" as "an attempt by one person to induce customers to believe that his products are actually those of another." *Id.* at 954. Palming off has been called the essence of unfair competition. Bechik Products, Inc. v. Federal Silk Mills, Inc., 135 F.Supp. 570, 577 (D.Md.1955), *quoting* Howe Scale Co. v. Wyckoff, Seamans and Benedict, 198 U.S. 118, 25 S.Ct. 609, 49 L.Ed. 972 (1905).

4. Two of the five affiants also stated that, even when they merely use a Pic catalog number without specifying the Pic name, they expect to receive a Pic product.

v. Greene, 161 F.2d 87 (3d Cir. 1947), plaintiff's affidavit that he was the rightful bishop of the First Episcopal District of the African Methodist Episcopal Church in Philadelphia was countered by defendant's affidavit that plaintiff had been unfrocked in a special session of the Episcopal Committee of the Church.[5] On the other hand, there are cases where preliminary injunctions have been granted on affidavits only. See, e. g., Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495 (2d Cir. 1962); Ross-Whitney Corp. v. Smith, Kline and French Laboratories, 207 F.2d 190 (9th Cir. 1953). It is true that in these cases the court indicated that there was relatively little dispute of fact, while in the present case defendant seeks to dispute a very basic fact. We agree, however, that, with the prima facie case established by the trademark, supplemented by the affidavits of disinterested witnesses, defendant's testimony of a trade custom could properly be regarded by the district court as insufficiently persuasive to require a hearing.

■ Next, defendant argues that plaintiff failed to make an adequate showing of probable damage to the public and to plaintiff's good will. But plaintiff submitted evidence that, on at least two occasions when a Pic product was ordered, the non-Pic product substituted by defendant was notably inferior. Furthermore, there was evidence that many manufacturers are specifically required by contract to use Pic products. Yet defendant's president admitted that it performed no quality control inspections on the non-Pic products it substituted. Also, since some manufacturers are required to use Pic products, it would appear likely that defendant's actions diverted to Adco at least some business which otherwise would have gone to plaintiff. Cf. Unistrut Corp. v. Power, 175 F.Supp. 294, 297 (D.Mass. 1958), aff'd, 280 F.2d 18 (1st Cir. 1960).

■ The district court enjoined defendant from filling any orders identified by the Pic name or catalog number with non-Pic products until after receiving written consent to such a substitution from the purchaser.[6] Defendant contends that this injunction is overly harsh because, shortly after this suit was initiated, it voluntarily instituted the practice of orally informing each customer at the time of his order that a non-Pic product would be substituted and noting on the invoice that such a substitution had been made. Because much of its business consists of telephone orders requesting immediate delivery, defendant maintains that the requirement that it receive written confirmation prior to shipment is unduly burdensome. It argues that its practice of oral notification by phone followed by written notification on the invoice is fully adequate to protect plaintiff's interests.

"The granting of a preliminary injunction pending final hearing is within the sound discretion of the trial court, and such an order will be reversed on appeal only upon a showing of abuse of that discretion." Safeway Stores, Inc. v. Safeway Properties, Inc., supra, 307 F.2d at 500; Unistrut Corp. v. Power, supra, 280 F.2d at 23; Esquire, Inc. v.

---

5. See also Huber Baking Co. v. Stroehmann Brothers Co., 208 F.2d 464 (2d Cir. 1953); Hershey Creamery Co. v. Hershey Chocolate Corp., 269 F.Supp. 45 (S.D.N.Y.1967); Cement Enamel Development, Inc. v. Cement Enamel of New York, Inc., 186 F.Supp. 803 (S.D.N.Y.1960). In four of the cases cited by defendant the district court refused to grant the preliminary injunction of its own accord. Sims v. Greene, supra, is the only case cited in which a court of appeals actually dissolved a preliminary injunction because it had been granted on the basis of affidavits.

6. The court required plaintiff to file a $10,000 bond "as security for the payment of such costs and damages as may be incurred or suffered by the defendant if it is found to have been wrongfully enjoined."

Esquire Slipper Manufacturing Co., Inc., 243 F.2d 540, 545 (1st Cir. 1957). In the instant case, the district court might well have doubted the reliability of defendant's oral notification policy [7] as well as the effectiveness of notification by invoice. For example, there is evidence that in many cases the employee in charge of ordering never sees the invoice and may therefore never learn that a substitution has been made. In any event, once the substituted component and invoice have been received, it is often too late (in terms of a company's production schedule) to reorder. Furthermore, as the district court noted, precision instrument components are admittedly only a small portion of defendant's business. We did say in Electronics Corporation of America v. Honeywell, Inc., 428 F.2d 191, 195 (1st Cir. 1970), that we *"might* accept the principle that so far as a preliminary injunction is concerned * * * voluntary reform will always suffice."* (Emphasis added.) However, there we had in mind an irrefutably demonstrated, total reform, whereas in the case at bar the reform is neither demonstrated nor total. In view of the extent of defendant's apparent misconduct and the lateness of its attempts at reformation, we find no abuse of discretion on the part of the district court in granting this injunction. *Cf.* United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); United States v. Oregon State Medical Society, 343 U.S. 326, 333, 72 S.Ct. 690, 96 L.Ed. 978 (1952); Callmann, Unfair Competition, Trademarks and Monopolies § 88.2, at 180–185 (1970); Note, Developments in the Law—Injunctions, 78 Harv.L.Rev. 994, 1076 (1965).

Affirmed.

7. We note that in his deposition defendant's president claimed that defendant had instituted an oral notification policy when it ceased to be a Pic distributor (May 26, 1969). There was evidence that no such notification was given in October 1969, however, and defendant's president later stated that the policy did not go into effect until December 22, 1969. This contradictory testimony throws further doubt on the reliability of the notification system proposed by defendant.