USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ________ No. 97-1289 AMERICAN BOARD OF PSYCHIATRY AND NEUROLOGY, INC., Plaintiff, Appellant, v. GLORIA JOHNSON-POWELL, M.D., Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. George A. O'Toole, Jr. U.S. District Judge] ___________________ ____________________ Before Stahl, Circuit Judge, _____________ Campbell and Bownes, Senior Circuit Judges. _____________________ ____________________ Roibin J. Ryan with whom Christopher B. Sullivan, Kirkland & ________________ ________________________ __________ Ellis, Richard S. Nicholson, and Cooke, Clancy & Gruenthal, L.L.P., _____ _____________________ ___________________________________ were on brief for appellant. Alice E. Richmond, with whom Ann Pauly and Richmond, Pauly & Ault _________________ _________ ______________________ LLP, were on brief for appellee. ___ ____________________ OCTOBER 23, 1997 ____________________ CAMPBELL, Senior Circuit Judge. Plaintiff American ____________________ Board of Psychiatry and Neurology, Inc. ("ABPN") appeals from the district court's denial of a preliminary injunction to order Dr. Gloria Johnson-Powell to desist from infringing its certification mark. ABPN had alleged in its complaint that Dr. Johnson-Powell had falsely claimed, both under oath and on her curriculum vitae, that she was ABPN-certified, in violation of the Trademark Act of 1946, 15 U.S.C.  1114(1)(a)-(b) (the "Lanham Act"). While seemingly in agreement that Dr. Johnson-Powell had, in fact, committed such infringements, the court denied relief because it believed she was unlikely to infringe in the future. ABPN asserts on appeal that the district court erred in refusing to grant a the preliminary injunction. While the case is close, we cannot say that the district court acted beyond its discretion; hence we affirm. I. BACKGROUND The facts are largely undisputed. ABPN is a non- profit Illinois corporation that certifies psychiatrists and neurologists as specialists qualified in their respective fields.1 ABPN secured and owns a federal registration for the mark: "The American Board of Psychiatry and Neurology."  ____________________ 1. ABPN certification is optional and is distinct from state licensure. -2- ABPN authorizes physicians to use its mark if they have met ABPN's requirements and received an ABPN certificate or license to use the mark. Dr. Johnson-Powell is a prominent physician and psychiatrist who has often testified as an expert witness in court. Although Dr. Johnson-Powell is not certified by the ABPN, she claimed under oath on several occasions that she was ABPN-certified. Dr. Johnson-Powell first made such statements at a deposition and during trial testimony in 1991. In 1993, after Dr. Johnson-Powell said she was ABPN- certified in a deposition, a lawyer challenged her certification status at trial. She proclaimed ignorance of whether she was actually certified. In 1995 she again misstated her status at a deposition and during trial testimony. In addition to her sworn testimony, Dr. Johnson- Powell also distributed a resume on which she claimed to be certified and even included a purported certification number. ABPN first learned of Dr. Johnson-Powell's assertions in November of 1995. ABPN wrote to her, inquiring about her actions. She replied that a clerical error had caused the inadvertent inclusion of a certification number on her resume and that she had remedied the error. ABPN brought this suit for certification mark infringement on December 17, 1996 in the United States District Court for the District of Massachusetts. On -3- December 30, the court granted a temporary restraining order ex parte against Dr. Johnson-Powell. On January 23 and 24, 1997, both parties attended a preliminary injunction hearing. ABPN presented documentary evidence and testimony; Dr. Johnson-Powell, who did not personally appear, tendered her affidavit promising not to repeat her infringing conduct and attaching a redacted resume that did not include a reference to ABPN certification. She also asserted that she has not seen patients nor provided expert witness services since 1995. Upon completion of the hearing, the district court denied ABPN's request for a preliminary injunction. The court reasoned that, although ABPN demonstrated a strong likelihood that it would prevail on the merits, it had failed to demonstrate a sufficient likelihood of irreparable harm in the near future. ABPN brings this interlocutory appeal from the district court's order denying its request for a preliminary injunction.2 II. STANDARD OF REVIEW In trademark actions as in others, courts of appeal will reverse a district court's denial of a preliminary  ____________________ 2. Our appellate jurisdiction rests upon 28 U.S.C.  1292(a)(1), which provides for appeals from "[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions." Id. ___ -4- injunction only if the district court abused its discretion. See Camel Hair & Cashmere Inst. of Am., Inc. v. Associated ___ __________________________________________ __________ Dry Goods Corp., 799 F.2d 6, 12-13 (1st Cir. 1986) (citing ________________ Planned Parenthood League of Mass. v. Bellotti, 641 F.2d ____________________________________ ________ 1006, 1009 (1st Cir. 1981)). Application of an improper legal standard, however, is never within a district court's discretion. See Camel Hair, 799 F.2d at 13. Similarly, a ___ __________ district court abuses its discretion if it incorrectly applies the law to particular facts. Id. We review findings ___ of fact made as part of the district court's denial of injunctive relief under a clearly erroneous standard. See ___ Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 222 __________ __________________________ (1st Cir. 1989). Absent clear error or other abuse of discretion, we will not reverse a district court's denial of an injunction merely because we would have been inclined to grant the injunction had we heard the matter ourselves. See ___ Celebrity, Inc. v. Trina, Inc., 264 F.2d 956, 958 (1st Cir. _______________ ___________ 1959). III. DISCUSSION As noted, ABPN has registered its certification mark. A registered certification mark receives the same protection as a trademark. See 15 U.S.C. 1054. A ___ registrant may obtain an injunction to preserve the value of its mark and to prevent future infringement. See 15 U.S.C. ___ -5- 1114, 1116. Here, ABPN sought a preliminary injunction to protect its mark in the interim before the district court could finally resolve ABPN's claims for damages and permanent injunctive relief. We have stated that a district court, when determining whether to issue a preliminary injunction in a trademark action, should weigh four factors: (i) the plaintiff's likelihood of success on the merits; (ii) whether the plaintiff risks suffering irreparable harm if the injunction is not granted; (iii) whether such injury outweighs the harm that injunctive relief would cause for the defendant; and (iv) whether the public interest would be adversely affected by granting or denying an injunction. See Equine Techs., Inc. v. Equitechnology, Inc., 68 F.3d 542, ___ ___________________ ____________________ 544 (1st Cir. 1995). Here, in denying relief, the district court mentioned two of these four factors in remarks made from the bench. It indicated that it found a strong likelihood of success on the merits by noting that: "[t]he indications are very strong that there has been an infringement in the past[,] so strong as to be perhaps undeniable." Nevertheless, in denying a preliminary injunction it said it "[did] not think that there has been a -6- showing that there is likely irreputable [sic] harm in the future."3  ABPN asserts that the district court erred in two respects. First, it contends that the district court abused its discretion by relying upon an incorrect legal standard to determine whether ABPN would suffer irreparable harm without a preliminary injunction. Second, ABPN asserts that the court clearly erred when it found that Dr. Johnson-Powell was not likely to infringe ABPN's mark in the near future. 1. Incorrect Legal Standard. ________________________ To support its argument that the district court used an incorrect legal standard to assess the likelihood of irreparable harm, ABPN relies on cases in which we have held that a trademark plaintiff who demonstrates a likelihood of success on the merits creates a presumption of irreparable harm. See, e.g., Societe des Produits Nestle, S.A. v. Casa __________ __________________________________ ____ Helvetia, Inc., 982 F.2d 633, 640 (1st Cir. 1992); Keds Corp, ______________ _________ 888 F.2d at 220; Camel Hair, 799 F.2d at 14-15. We have ___________ declared in cases such as this one, involving literally false statements, that "only a slight likelihood of injury need be __________________ shown to warrant injunctive relief." Camel Hair, 799 F.2d at __________  ____________________ 3. The court did not expressly balance the relief afforded by the injunction against the harm to the defendant; however, it said that it did not "rest the denial of the preliminary injunction on an assessment of Dr. Johnson-Powell's likely reaction." It made no mention of the impact of the injunction on the public interest. -7- 15 (emphasis added). Reducing the standard of proof for irreparable harm in trademark actions reflects the intent of 43(a) of the Lanham Act, 15 U.S.C. 1125(a), "to encourage commercial companies to act as the fabled 'vicarious avenger' of consumer rights." Camel Hair, 799 F.2d at 15. __________ ABPN argues that the district court abused its discretion by requiring it to demonstrate "likely" irreparable harm and imminent infringement. We agree with the district court, however, that, while certification mark and trademark infringements may be presumed without more to cause irreparable harm, there is no parallel presumption that because such infringements have occurred in the past, they will inevitably be continued into the future.4 Rather, plaintiff retained the ordinary burden of showing a sufficient likelihood that the infringing conduct would occur in the future so as to give rise to an enjoinable threat of irreparable harm. Here, the court determined that there was "no prospect that there would be [future] occasions of infringement." It is clear from Camel Hair itself that the __________  ____________________ 4. In saying this, we do not question that previous infringing conduct will ordinarily imply often very strongly the likelihood of continued future violations, and thus may well be persuasive evidence of threatened irreparable harm. We say merely that such evidence does not amount to a legal presumption; it is proof that, like other factual evidence, may be rebutted by other facts and circumstances. -8- court made no legal error in considering whether or not the evidence as a whole indicated a threat of continued infringement. One of the Camel Hair defendants who had __________ previously sold infringing garments removed them from its racks prior to the preliminary injunction hearing. Against that defendant, we upheld the district court's denial of an interlocutory injunction, stating that "there was no likelihood of [that particular defendant] causing any injury to [the plaintiff] at the time the request for an injunction was being considered." Camel Hair, 799 F.2d at 13. The ___________ purpose of interlocutory injunctive relief is to preserve the status quo pending final relief and to prevent irreparable injury to the plaintiff not simply to punish past misdeeds or set an example. See CMM Cable Rep., Inc. v. Ocean Coast ___ ____________________ ____________ Properties, Inc., 48 F.3d 618, 620 (1st Cir. 1995); _________________ Acierno v. New Castle County, 40 F.3d 645, 647 (3d Cir. _______ ___________________ 1995). Absent likelihood of future infringement, there can be none of the ill effects that an injunction seeks to prevent: no loss of future profits, no loss of goodwill or reputation. Thus, contrary to ABPN's suggestion, the district court's inquiry into the question of future irreparable injury was proper. ABPN contends that Camel Hair commands courts to __________ grant a preliminary injunction in a trademark action if the plaintiff demonstrates even a "slight likelihood" of -9- irreparable injury. The district court's use of "likely" is said to have signaled use of too high a standard of proof here.5 But while even a "slight likelihood" of future infringement may well warrant injunctive relief, we cannot say that a district judge's discretion to withhold an injunction turns here on such nuances of phraseology. The "slight likelihood" standard was discussed in Camel Hair in ___________ reference to whether the act of infringement would itself create irreparable harm, not to whether there was a likelihood of infringement in the future. As we have said elsewhere, "[b]y its very nature, trademark infringement results in irreparable harm because the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified, and, thus, the trademark owner cannot adequately be compensated." Societe Des Produits Nestle, S.A., 982 F.2d _________________________________ at 640. Certainly a court should grant an interlocutory  ____________________ 5. At one point the court stated that "harm isn't presumed if it's not certain or if it's certain that they won't occur or not certain that they won't occur." Presumably, the judge meant that he found little likelihood that Dr. Johnson-Powell would infringe in the near future. This reading is buttressed by the fact that, in the same breath, the judge analogized this matter to Camel Hair by noting that in both __________ cases there was "no prospect that there would be [future] occasions of infringement from the defendant."  The judge also noted, however, that he did not "think there [was] a showing that [the infringing] behavior [was] likely to continue," and stated that the general requirements of equity demand that a plaintiff "show the likelihood they are about to suffer some irreparable harm." He also found that the relevant question for the court was "whether the harm is likely to occur or not."  -10- injunction in a trademark case when a realistic risk of future infringement (within the time covered by the injunction) has been demonstrated, but we cannot say the district court misunderstood this point. To be sure, there was ample evidence here of past infringing conduct, not to mention conduct indicative of bad faith. As mentioned in note 4, supra, such evidence, if not _____ rebutted, may give rise to a strong inference that further infringing acts will occur in the future. Even so, we cannot say that a defendant can never take actions and provide assurances sufficient, in the face of such evidence, to convince a court that she will not commit future violations. Our system leaves it primarily in the hands of the district court to ascertain whether the danger of future harm has been adequately established so as to warrant the protection of an injunction. In arguing for a rule that, in a situation like this, injunctive relief is necessarily required as a matter of law, ABPN points to our language in Camel Hair that "the __________ district court's finding that it was probable that defendant's labels were literally false in itself warranted the grant of the injunction sought." Camel Hair, 799 F.2d at __________ 16. But in that aspect of Camel Hair, it is clear that the __________ -11- district judge found, and that we accepted, that infringing conduct would continue unless enjoined.6 We, therefore, reject ABPN's argument that the court committed legal error in denying injunctive relief on _____ the ground that there was no prospect of future infringement. 2. Findings of fact. ________________ ABPN's more potent argument is that, even if the court used a permissible legal standard to assess irreparable harm, the district court clearly erred in its factual finding thatDr. Johnson-Powell would not infringe in the near future. ABPN argues that the court below should not have credited Dr. Johnson-Powell's claim of voluntary reformation7 because her conduct did not rise to the level of "irrefutably demonstrated, total reform." Pic Design Corp. v. Bearings _________________ ________  ____________________ 6. In Camel Hair, the district court found "there was a ___________ probability that further marketing of [the infringing product] would occur if an injunction was not issued." Camel _____ Hair, 799 F.2d at 9; see also Keds Corp., 888 F.2d at 217 ____ ___ ____ __________ (noting that defendant had refused to stop selling its remaining inventory of the infringing product); Donoghue v. ________ IBC/USA (Publications), Inc., 886 F. Supp. 947, 953 (D. ______________________________ Mass.), aff'd, 70 F.3d 206 (1st Cir. 1995) (noting that _____ defendant continued its infringing activity). 7. Dr. Johnson-Powell filed an affidavit, in which she asserted, inter alia, that: (1) she has not seen patients _____ ____ since 1995; (2) she has not circulated her infringing resume since 1995; (3) the false claim on her resume was inadvertent; (4) she tried to locate and destroy all copies of her misleading resume; (5) she has not served as an expert witness, nor assisted an expert witness, since 1995; and (6) she will not claim to be Board certified in the future.  -12- Specialty Co., 436 F.2d 804, 809 (1st Cir. 1971). We think _____________ ABPN reads Pic Design out of context. __________ In Pic Design, we limited an earlier statement in __________ Electronics Corp. of Am. v. Honeywell, Inc., 428 F.2d 191 _________________________ ________________ (1st Cir. 1970). In that earlier case, we stated in dicta that "[w]e might accept the principle that so far as a preliminary injunction is concerned, . . . voluntary reform will always suffice." Id. at 195 (emphasis added). In Pic ______ ___ ___ Design, we modified our statement in Honeywell so that ______ _________ voluntary reform will always suffice to prevent injunctive ___________________________ relief only if it is "irrefutably demonstrated, total reform." Pic Design, 436 F.2d at 809. It does not follow, __________ however, that a district court may, in its discretion, credit a claim of reform only if it meets the Pic Design standard. __________ Our affirmance of an injunction in that case demonstrated only that a court does not necessarily abuse its discretion by granting an injunction when the nonmoving party has voluntarily abated its infringing activity. Whether a court goes too far in denying an injunction in the absence of something less than total reform is a fact-specific matter. ABPN argues that the record contains insufficient evidence for a court to conclude that Dr. Johnson-Powell would not engage in infringing conduct in the near future. As ABPN correctly notes, our decision to affirm the district court's denial of injunctive relief against one of the -13- defendants in Camel Hair rested upon the good faith of the __________ infringer and the infringer's rapid and credible cessation of its infringing activities. See Camel Hair, 799 F.2d at 13. ___ __________ ABPN argues that Dr. Johnson-Powell has not displayed similar good faith and that she is extremely likely to infringe again. We must agree that the evidence of past infringement is very strong. The district court itself remarked that the evidence of Dr. Johnson-Powell's past infringement was "so strong as to be perhaps undeniable." The district court also thought her affidavit was "probably not true," apparently in respect to the claimed "inadvertence of the error on the resume." It can also be inferred from the record that Dr. Johnson-Powell violated past promises to reform her conduct. Moreover, Dr. Johnson-Powell did not proffer her affidavit until after the court had entered a temporary restraining order, timing argued by ABPN to suggest a lack of sincerity. Clearly, Dr. Johnson-Powell's behavior does not rise to the level of reformation displayed by the defendant in Camel Hair; on this record, the court could ___________ undoubtedly have issued preliminary injunctive relief had it been so inclined. Our review, however, is for clear error and for abuse of discretion. See Keds Corp., 888 F.2d at ___ __________ 222. We cannot say these standards were reached here. -14- Despite its skepticism about some aspects of Dr. Johnson-Powell's affidavit, the district court plausibly found that the character of Dr. Johnson-Powell's past misstatements rendered the possibility of recurring infringement remote. Serving as a courtroom expert and disseminating a resume, Dr. Johnson-Powell's two methods of infringement, are "not like someone offering goods for sale," which could occur at any time. In support of the court's determination was Dr. Johnson-Powell's affidavit of January 8, 1997, filed with the court by her attorneys and signed under penalty of perjury, in which she stated that, in the future, she has "no intention to and will not represent [herself] as being certified by The American Board of Psychiatry and Neurology and will not engage in any unauthorized use of the registered certification mark of The American Board of Psychiatry and Neurology." She also indicated that she no longer engages in the business of testifying as an expert witness. Along with the affidavit was a copy of her curriculum vitae which no longer contained her claim of certification. Her attorneys, moreover, offered to stipulate in writing that, "from this date forward, Gloria Johnson-Powell will not represent herself as being certified by [ABPN] and will not engage in any unauthorized use of the registered certification mark."  -15- The district court retains jurisdiction over this matter pending final determination of the action brought by ABPN. Dr. Johnson-Powell and her attorneys are unquestionably aware that any violation during that period would constitute a serious breach of faith with the court and would erode any hopes defendant may continue to have for a successful outcome. ABPN, moreover, will still be able to request final injunctive relief. District courts are better positioned than ourselves to observe the nuances of these matters. Viewing all the evidence available to the district court and the posture of this appeal through the deferential lens of the applicable standard of review, we cannot say that the district court clearly erred or otherwise abused its discretion in concluding that the defendant will not further infringe ABPN's mark in the future period during which a preliminary injunction would operate. Affirmed.  ________ -16-