[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 29, 2002
THOMAS K. KAHN
CLERK

_____

No. 02-10322
_____

D.C. Docket No. 01-01198 CV-J-20

JOHNSON & JOHNSON VISION CARE, INC.,

Plaintiff-Appellee,

versus

1-800 CONTACTS, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Middle District of Florida

_____

**(July 29, 2002)**

Before BIRCH, MARCUS and CUDAHY[*], Circuit Judges.

BIRCH, Circuit Judge:

_____

[*] Honorable Richard D. Cudahy, U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

In this interlocutory appeal, 1-800 CONTACTS, Inc. ("1-800") argues that the district court erred when it issued a preliminary injunction forbidding 1-800 from making certain statements about the products and services of Johnson & Johnson Vision Care, Inc. ("J&J"). The district court based its injunction on the conclusion that three of the advertisements used by 1-800 included false statements about J&J, and as such violated § 43(a) of the Lanham Act, codified at 15 U.S.C. 1125(a).[1] Because we conclude that the district court erred in applying the law, we VACATE the preliminary injunction, and REMAND.

## I. BACKGROUND

Both J&J and 1-800 are in the contact lens business. J&J manufactures lenses, including those under the well-known ACUVUE ® brand; 1-800 sells lenses, including ACUVUE, over the phone and the internet. J&J argues that three

---

[1] As codified, § 43(a) provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleadng representation of fact, which . . .

   (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

of 1-800's advertisements make statements about J&J or about ACUVUE that are literally false. The first advertisement at issue is a letter sent by 1-800 to its customers recommending CIBA Vision's Focus Dailies, a 1-day lens, over J&J's ACUVUE, a 2-week lens. In this letter (the "Focus Dailies letter"), 1-800 cites a study published by a trade journal named Contact Lens Spectrum ("CLS study") which identified a five to one consumer preference for Focus Dailies over ACUVUE. The second advertisement, also a letter, was sent by 1-800 to customers who requested J&J lenses that were not in stock at the time of the customer's order. This letter (the "Exclusive Deal letter") explains that 1-800's inability to process the customer's order was due to J&J's policy of distributing contacts exclusively to eye doctors, rather than to retailers like 1-800. The third advertisement is a four-page pamphlet about Focus Dailies (the "Focus Dailies pamphlet") that was sent out with the Exclusive Deal letter. The pamphlet cites the five to one preference for Focus Dailies and compares the qualities of the lens against those of "competing lenses." R1-33, Ex. G at 3.

J&J brought suit against 1-800, alleging false advertising under § 43(a) of Lanham Act and under multiple state law provisions across the country. J&J moved for a preliminary injunction, which the district court granted. 1-800 now appeals the injunction.

## II.  DISCUSSION

Only if the district court abused its discretion will we reverse the grant of a preliminary injunction.  Am. Bd. of Psychiatry & Neurology, Inc. v. Johnson-Powell, 129 F.3d 1, 2-3 (1st Cir. 1997).  We review the district court's findings of fact under the clearly erroneous standard.  Id. at 3.  The facts found by a district court are "clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Univ. of Georgia Athletic Ass'n v. Laite, 756 F.2d 1535 (11th Cir. 1985) (internal quotations omitted).  The clearly erroneous standard is appropriate in cases, such as this one, in which the evidence is primarily documentary; the fact that the district court's decision was not a function of credibility determinations does not affect the standard of review.  Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S. Ct. 1504, 1511-12 (1985).  Lastly, our review of the district court's application of law is de novo, premised on the understanding that "[a]pplication of an improper legal standard . . . is never within a district court's discretion."  Johnson-Powell, 129 F.3d at 3.

For a district court to grant a preliminary injunction, the movant must establish: (1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction,

4

(3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest. Carrillon Imp., Ltd. v. Frank Pesce Int'l Group Ltd., 112 F.3d 1125, 1126 (11th Cir. 1997) (per curiam). To establish the likelihood of success on the merits of a false advertising claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the movant must establish: (1) the ads of the opposing party were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) the movant has been — or is likely to be — injured as a result of the false advertising. ALPO Petfoods, Inc. v. Ralston Purina Co., 913 F.2d 958, 964 (D.C. Cir. 1990). If the movant is unable to establish a likelihood of success on the merits, a court need not consider the remaining conditions prerequisite to injunctive relief. Pittman v. Cole, 267 F.3d 1269, 1292 (11th Cir. 2001).

Our analysis begins and ends with the five elements J&J needed to establish the likelihood of success. First, J&J needed to prove that 1-800's ads were false or misleading. This element is satisfied if the challenged advertisement is literally false, or if the challenged advertisement is literally true, but misleading. Johnson & Johnson * Merck Consumer Pharms. Co. v. Smithkline Beecham Corp., 960

5

F.2d 294, 297 (2d Cir. 1992). It is clear that the district court found each of the three advertisements to be either false or misleading, but it is unclear into which category the court placed the ads.[2]

The category is relevant; once a court deems an advertisement to be literally false, the movant need not present evidence of consumer deception. Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc., 185 F.3d 606, 614 (6th Cir. 1999). If the court deems an ad to be true but misleading, the movant — even at the preliminary injunction stage — must present evidence of deception.[3] While "full-blown consumer surveys or market research are not an absolute prerequisite," the moving party must provide "expert testimony or other evidence." United Indus. Corp., 140 F. 3d at 1183. The district court did not require J&J to provide evidence that 1-800's advertisements deceived or tended

---

[2] The district court found that the Focus Dailies letter and the Focus Dailies pamphlet "misrepresented" the results of the contact lens study, and that the ads were likely to "mislead[]" a consumer. R1-38-4. While such characterizations support the reading that the district court considered the ads to be misleading, not literally false, the district court also referred to the "false comparative claims" included in the two ads. Id. at 7. As for the Exclusive Deal letter, the district court found that 1-800 included "misleading statements" regarding J&J's distribution policy. Id. at 4. Later in the opinion, however, the district court referred to the "false statements" in the Exclusive Deal letter. Id. at 6.

[3] There is debate among the circuits regarding the extent of the movant's burden. Some circuits require that the movant prove that the ads *actually* deceive consumers, see, e.g., United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1183 (8th Cir. 1998), while others are satisfied with proof that the ads *have a tendency* to deceive consumers, see, e.g., Pizza Hut, Inc. v. Papa John's Int'l, Inc., 227 F.3d 489, 497 (5th Cir. 2000). The distinction does not affect the outcome of this case. Even in circuits with the lower standard, the movant must produce some evidence of consumer reaction, and J&J presented none.

to deceive consumers. R1-38-6. As such, we conclude that the district court found the advertisements to be literally false.

There is one additional point to consider before we begin our analysis: the district court did not assess each advertisement independently, but instead evaluated the three in concert. R1-38-4. The court reasoned that "[i]f the ad campaign as a whole would be misleading to the reasonable consumer, then the defendant should be enjoined from using that ad campaign." Id. It is true that "a court must analyze the message conveyed in full context," Castrol, Inc. v. Penzoil Co., 987 F.2d 939, 946 (3rd Cir. 1993), and that "the court must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other." Id. (citation omitted). While the court should consider context, it may not *assume* context. The problem with the district court's approach is the assumption that consumers will be exposed to every advertisement in a campaign.[4] Accordingly, we have organized our opinion to reflect the fact that 1-800 sent the Exclusive Deal letter and the Focus Dailies

--------

[4] Time lapse is a related issue. Even if a consumer saw each advertisement in a campaign, it is unlikely that the consumer would use the elements of Advertisement A seen on a Monday to interpret Advertisement B seen on a Thursday. If there is no time lapse, then consumers may well use Advertisement A to interpret Advertisement B. For example, 1-800 sent its Focus Dailies pamphlet along with its Exclusive Deal letter. Because a consumer was likely to view those advertisements at the same time, it is appropriate to analyze them together. The Focus Dailies letter, however, was sent alone. As such, we will not assume the context of the Exclusive Deal letter or the Focus Dailies pamphlet when analyzing the Focus Dailies letter.

7

pamphlet together, and sent the Focus Dailies letter without any accompanying advertisement.

A.  The Focus Dailies Letter

The Focus Dailies letter states that "Focus Dailies are preferred 5 to 1 over Acuvues." R1-33, Ex. A (emphasis omitted). The letter elaborates that 84% of participants in a recent study preferred Focus Dailies, finding them to be more comfortable, more convenient, and easier to handle than ACUVUE lenses. Id. The district court found that the Focus Dailies Letter "misrepresented to consumers the superiority of Focus Dailies" by failing to "make it clear to the consumer that the study was comparing modalities (i.e. length of time wearing the lens, one day wear versus two week wear) and not the quality of lenses with the same modality." R1-38-4.

As the common law of false advertising has developed, several circuits have determined that the nature of a plaintiff's burden in proving an advertisement to be literally false should depend on whether the defendant's advertisement cites consumer testing. See, e.g., C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare L.P., 131 F.3d 430, 435 (4th Cir. 1997); Rhone-Poulenc Rorer Pharms. Inc. v. Marion Merrell Dow, Inc., 93 F.3d 511, 514-15 (8th Cir. 1996); Castrol,

8

Inc. v. Quaker State Corp., 977 F.2d 57, 62 (2d Cir. 1992). If an advertisement cites such testing, the advertisement is labeled as an "establishment" claim. BASF Corp., v. Old World Trading Co., 41 F.3d 1081, 1090 (7th Cir. 1994). To prove an establishment claim literally false, the movant must "prove that these tests did not establish the proposition for which they were cited." Quaker State Corp., 977 F.2d at 63. We find this method of evaluating such advertisements to be analytically sound, and adopt the reasoning for use in the Eleventh Circuit.

In this case, the goal of the CLS study "was to evaluate the overall patient preference of Focus Dailies one day contact lenses as compared to two-week replacement Acuvue lenses." R1-33, Ex. B at 1. The CLS study concluded that a significant majority of the test participants preferred Focus Dailies. Id. at 3. In its Focus Dailies letter, 1-800 leads with a quotation from the CLS study: "patients concluded that the Focus Dailies lens was more comfortable overall, more convenient and easier to handle than the two-week Acuvue lens." R1-33, Ex. A (quoting R1-33, Ex. B at 3). The Focus Dailies letter *explicitly states* that the CLS study compared a one-day lens to a two-week lens. Using the establishment claim method of evaluating the contested advertisement, the district court's finding of literal falsity cannot be upheld.

It is true that the CLS study includes two variables: brand and modality. Modality is not a constant, and to that extent the design of study was imperfect.[5] The fact that a study's design is imperfect, however, does not render 1-800's advertisements false.[6] J&J cannot prove that the CLS survey reached a conclusion different from the proposition cited in the Focus Dailies letter. Because the district court did not properly evaluate the advertised proposition, and because J&J cannot satisfy the burden of proof once the proposition is appropriately analyzed as an establishment claim, we conclude that the district court's decision with respect to the Focus Dailies letter was error.

B.  The Exclusive Deal Letter

1-800 sent the Exclusive Deal letter to 1-800 customers who requested  J&J contacts that were out of stock at the time of the customer's order.  The letter

---

[5]  The district court determined that the Focus Dailies letter would mislead consumers to believe that CLS tested Focus Dailies against ACUVUE's one-day disposable lens.  1-800's advertisement, however, explicitly states that CLS compared a one-day lens to a two-week lens. Although the five to one preference is stated in places without clarifying the modalities tested, the Focus Dailies letter cannot be interpreted as literally false.  The best case that a plaintiff could make is that the letter is misleading — an argument which J&J has not raised and which we do not address.

[6]  A movant may undermine the validity of the test results cited by the defendant "by demonstrating that the tests were not sufficiently reliable to permit a conclusion that the product is superior." Quaker State, 977 F.2d at 63.  J&J, however, did not contest the reliability of the CLS survey.

explains 1-800's inability to fill the order, stating that J&J "has cut off our supply of some of their products, including yours, in order to force you to buy them from an eye doctor instead of from us." R1-33, Ex. F.[7] During the preliminary injunction hearing, 1-800 stated that despite the fact that J&J had cut off its supply, 1-800 is still able to fill over 99% of customer orders for J&J products. R2-71. The district court found that 1-800's fill rate contradicted 1-800's statement about J&J's distribution policy, and declared false advertising: "1-800 has made false statements in its advertising by simultaneously stating that it cannot supply J&J lenses to its customers and also stating that it fills nearly all its orders for J&J lenses." R1-38-6.

As mentioned previously, the fact that the district court did not require evidence of consumer confusion leads us to the conclusion that the district court found 1-800's statements to be literally false. See Am. Council, 185 F.3d at 614. Review of the facts, however, reveals that both of 1-800's statements are true: (1) J&J had cut off 1-800's supply, and (2) 1-800 was able to fill over 99% of customer

---

[7] The Exclusive Deal letter also included a policy statement from the code of ethics promulgated by the American Medical Association. The policy statement called into doubt the ethics of J&J's distribution policy. R1-33, Ex. F. Before the preliminary injunction hearing at the district court, 1-800 acknowledged that the quotation was not applicable to the circumstances, R1-33-5, and omitted the quotation from the letter. See id. at Ex. K.

orders for J&J.[8]  1-800 was able to maintain a stock of J&J products by purchasing the lenses through alternative channels.  After 1-800 revealed the presence of a gray market, the gap between two superficially contradictory statements is bridged.  Thus, 1-800's statement that J&J cut off its supply of lenses is not false due to a contradiction.

In addition, the district court found that the Exclusive Deal letter was literally false because J&J contracted with "eye care practitioners" rather than with "eye doctors" as stated in 1-800's advertising material.  R1-58-1-2.  According to the district court, the category of "eye care practitioner" is broader than the category "eye doctor."  Id. at 2.  Although there is a strong argument that 1-800's advertisement is better construed as underinclusive, rather than as literally false, we need not reach that conclusion.  Instead, we reverse based on the district court's application of the law.

To succeed on a claim of false advertising, the plaintiff must establish that "the defendant's deception is likely to influence the purchasing decision." Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 311 (1st Cir. 2002) (internal quotations omitted).  A plaintiff may establish this materiality

---

[8] Pursuant to a court-approved settlement agreement, J&J is now distributing lenses to direct retailers, provided certain conditions are met.  See In re Disposable Contact Lens Antitrust Litigation, No. MDL1030 (M.D. Fla., Feb. 8, 2001 ).  The fact that J&J now distributes to direct retailers does not affect the outcome of this case.

requirement by proving that "the defendants misrepresented an inherent quality or characteristic of the product." Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 855 (2d Cir. 1997) (internal quotations omitted). The materiality requirement is based on the premise that not all deceptions affect consumer decisions. In Motorola, for example, the Second Circuit concluded that Motorola's advertisement that its SportsTrax device provided sports information "direct from each arena" was literally false, but irrelevant to consumer decisions. Id. Consumers were interested in the fact that statistics were updated quickly, and did not make purchasing decisions based on whether data was collected firsthand or though broadcasts. Id. J&J's argument fails because J&J did not prove that 1-800's use of the term "eye doctor" was material to consumer decisions.

The plaintiff must establish materiality even when a the court finds that the defendant's advertisement is literally false. Cashmere & Camel Hair, 284 F.3d at 312 n.10; S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 238 (2d Cir. 2001). The district court appears to have conflated the element of consumer deception with the element of materiality. R1-38-6 ("[T]he Court now turns to whether or not the deception was material. While J&J has the ultimate responsibility for proving that the deception did in fact affect consumers' purchasing decisions . . . J&J . . . only need show that the statements had the

13

tendency to deceive consumers."). Such conflation is not without precedent; it appears that the Fifth Circuit blurred the boundary between the two elements in its recent Pizza Hut decision. See Pizza Hut, 227 F.3d at 497.[9] To the extent that the Fifth Circuit decision marks a circuit split, we stand with the First and Second Circuits, concluding that the plaintiff must establish materiality even when a defendant's advertisement has been found literally false.

We note that 1-800 sent the Exclusive Deal letter along with the Focus Dailies pamphlet. The letter was sent to explain 1-800's inability to fill a customer's order, and the pamphlet was sent to provide the customer with an alternative. Beyond this link, our analysis of the Exclusive Deal letter is not informed by the Focus Dailies pamphlet.

## C. The Focus Dailies Pamphlet

The Focus Dailies pamphlet is an advertisement, highlighting the advantages of the lens: comfort, convenience, and cost. The district court found that the pamphlet, considered along with the Focus Dailies letter, made "false comparative claims." R1-38-7. This language, coupled with the fact that the district court did

_____

[9] In Pizza Hut, the Fifth Circuit reasoned that "[w]ith respect to materiality, when the statements of fact at issue are shown to be literally false, the plaintiff need not introduce evidence on the issue of the impact the statements had on consumers. In such a circumstance, the court will assume that the statements actually misled consumers." 227 F.3d at 497 (internal citation omitted).

14

not require proof of consumer confusion, see Am. Council, 185 F.3d at 614, leads us to understand that the district court found the advertisement to be literally false.

We begin with the language of the pamphlet. The cover cites a five to one consumer preference for Focus Dailies, but does not name a competing product. R1-33, Ex. G at 1. In fact, neither "Johnson & Johnson" nor "Acuvue" appear anywhere in the pamphlet. The other three pamphlet pages explain that the lens is comfortable due to thin edges and high water content, and reasonably priced due to cost-efficient production.

J&J's false advertising claim is based on 1-800's comparison of Focus Dailies to ACUVUE. Because the Focus Dailies pamphlet does not cite "Acuvue" or "J&J," we turn to context to determine whether a consumer might imply a comparison of the two products. The district court analyzed the Focus Dailies pamphlet within the context of the Focus Dailies letter. These two advertisements were not paired by 1-800; there would be no reason for consumers to see them together.[10] The pamphlet was actually coupled with the Exclusive Deal letter,

---

[10] The district court reasoned that a consumer whose interpretation of the Focus Dailies pamphlet was informed by the Focus Dailies letter might reason that the CLS study compared Focus Dailies to the one-day disposable lens under the ACUVUE brand. As previously mentioned, however, there is no reason for consumers to see these advertisements together. Moreover, "[t]he greater the degree to which a message relies upon the . . . consumer to integrate its components and draw the apparent conclusion . . . the less likely it is that a finding of literal falsity will be supported." United Indus. Corp., 140 F.3d at 1181.

which focused on J&J and its trade practices.  Within the Exclusive Deal letter is a reference to ACUVUE: "We have enclosed more information about a lens preferred 5 to 1 to Acuvue."  R1-33, Ex. F.  Because the context of the Focus Dailies pamphlet includes a reference to ACUVUE, the nature of our analysis shifts.  We analyze the advertisement as an establishment claim: J&J must establish that the quoted proposition is not supported by the CLS study.  See Quaker State Corp, 977 F.2d at 63.  As explained earlier in this opinion, J&J did not and cannot meet this burden of proof, so the pamphlet — even read within an expansively defined context— cannot be construed as literally false.

## III.  CONCLUSION

The district court erred in its application of the law.  The Focus Dailies letter cannot be considered literally false because J&J did not disprove 1-800's establishment claim.  To make its case, J&J needed to prove that the cited study did not establish the advertised proposition.  Quaker State Corp., 977 F.2d at 63.  The CLS study did in fact establish that consumers prefer Focus Dailies, which is a one-day lens, to ACUVUE, which is a two-week lens, so J&J's argument fails.  As for the Exclusive Deal letter, 1-800's statement that J&J has cut off its supply of lenses is not literally false because the statement appears to contradict the fact that

16

1-800 is able to fill over 99% of customer orders for J&J lenses. Both statements are true. Nor is 1-800's reference to "eye doctor" rather than "eye care practitioner" reason for an injunction: J&J failed to prove that 1-800's use of the phrase "eye doctor" had any effect on consumer behavior. With respect to the Focus Dailies pamphlet, J&J again faces an establishment claim by 1-800 which J&J did not and cannot disprove. Accordingly, we conclude that the district court granted the preliminary injunction in error.

VACATED AND REMANDED.