Eleanor L. Ross, United States District Judge
Presently before the Court are several matters. The Court's rulings and conclusions are set out below.
I. Background
Plaintiffs Supplement Center, LLC, Kenneth Affolter, and M&N Distributing LLC filed this action on July 29, 2018, against Defendants Evol Nutrition Associates, Inc. ("Evol"), Jeremy Nickels, Annbiz LLC, and Asif Noorani. Am. Compl. [Doc. 3]. Notably, this case arises from the same *1284 background of facts as a case previously before the undersigned, Evol Nutrition Associates, Inc. v. Supplement Center, LLC & Kenneth Affolter, No. 1:17-CV-1572-ELR (N.D. Ga. May 2, 2017) ("the Original Action"). In the Original Action, Evol brought suit against Supplement Center and Kenneth Affolter alleging various trademark infringement claims. Original Action [Doc. 1]. Specifically, Evol, who produces dietary supplements sold in stores nationwide, alleged that Supplement Center and Affolter, through their advertisement and sale of a product called "Walkers," were infringing upon Evol's trademark for a dietary supplement called "Sleep Walkers." The Original Action concluded when, on April 24, 2018, at the Parties' request, the Court entered a Consent Judgment and Permanent Injunction Order ("Consent Judgment"). Id. [Doc. 42].
Pursuant to the Consent Judgment, the Court (1) ordered Supplement Center and Affolter to pay a monetary judgment to Evol in the amount of $50,000.00; (2) permanently enjoined Supplement Center and Affolter from producing or selling any dietary supplement products containing both Phenibut and Gamma aminobutyric acid ("GABA"); (3) permanently enjoined Supplement Center and Affolter from using the mark " 'Walkers,' 'Wakers,' or any colorable variation thereof;" and (4) dismissed Supplement Center and Affolter's counterclaims with prejudice. [Id. ] The Court retained "personal and subject matter jurisdiction over all parties in [the] matter to address any issues arising out of [the Consent Judgment]." [Id. ]
Following the entry of the Consent Judgment, the Parties encountered several issues. According to Supplement Center and Affolter, Evol misrepresented the Consent Judgment to Supplement Center's existing business relationships. Am. Compl. ¶ 21. Additionally, Supplement Center alleges that they have now realized that Evol obtained the Consent Judgment via fraud. Id. ¶ 51. Thus, on July 29, 2018, Plaintiffs filed the present action against Defendants alleging claims for (I) intentional tortious interference with existing economic relationships; (II) trade libel; (III) common law unfair competition; (IV) false advertising pursuant to the Lanham Act; and (V) common law fraud. Id.
In contrast, Defendants contend that shortly after the entry of the Consent Judgment, Plaintiffs willfully violated the Consent Judgment by marketing products under the enjoined trade names of "Walkers" and "Walters;" marketing and selling the product "Stride," which contains the prohibited combination of Phenibut and GABA; and failing to provide payments in accordance with the agreed-upon payment schedule. Additionally, Defendants allege that Plaintiffs have falsely advertised the product "Stride." Thus, on November 7, 2018, and in response to Plaintiffs' amended complaint, Defendants filed an Answer wherein they asserted counterclaims for (I) breach of consent judgment, (II) tortious interference with business relations, (III) civil conspiracy, and (IV) false advertising pursuant to the Lanham Act. Answer [Doc. 8]. Plaintiffs now move to dismiss Defendants' counterclaims. [Doc. 11]. Also on November 7, 2018, Defendant Evol filed a Motion to Join Additional Party as Counterclaim Defendant. [Doc. 8]. Having been fully briefed, these motions are now ripe for the Court's review.
Separately, on December 3, 2018, shortly after filing its Answer and Counterclaims in this case, Evol moved in the Original Action, inter alia , to reopen the case and for a finding that Supplement Center and Kenneth Affolter are in civil contempt of Court for violating the Consent Judgment. Original Action [Doc. 44]. Although the resolution of that matter will *1285 be handled separately, the Court notes that the motion is also fully briefed.
II. Procedural Concerns
Prior to addressing the pending motions, the Court finds it necessary to address the various procedural concerns represented in this case. In short, the Court finds that the Parties failed to follow proper procedure for presenting the Court with their disputes concerning the Consent Judgment. For clarity, the Court will discuss each party's failure in turn.
A. Plaintiffs' Allegations of Fraud Concerning the Consent Judgment
As noted above, Plaintiffs bring this case against Defendants alleging claims for (I) intentional tortious interference with existing economic relationships; (II) trade libel; (III) common law unfair competition; (IV) false advertising pursuant to the Lanham Act; and (V) common law fraud. Am. Compl. Notably, when the Court examines Count V for common law fraud, it is clear that Plaintiffs are making a direct allegation that Defendants conducted themselves in a fraudulent manner when negotiating and securing the Consent Judgment that concluded the Original Action. Id. ¶¶ 48-52. The effect of a ruling in favor of Plaintiffs on this count would result in the Court setting aside the Consent Judgment. Boykin v. Boykin, No. 95-0318-CB-C, 1996 U.S. Dist. LEXIS 8584, at * 13 n.9 (S.D. Ala. June 6, 1996) (noting that fraud in the inducement would nullify a consent judgment).
When a party declares that a consent judgment is the product of fraud, the proper procedure for presenting this allegation to the Court is not a new action for common law fraud, but rather an appropriate motion in the original case, particularly when, as here, the Court has retained personal and subject matter jurisdiction to address any issues arising out of the Consent Judgment. See FED. R. CIV. P. 60(b)(3) (permitting courts to set aside judgments procured by fraud); O'Burn v. Shapp, 70 F.R.D. 549, 552 (E.D. Pa. 1976) (finding intervenors' separate action alleging that a consent decree should be set aside due to fraud as not actionable because the court continued to maintain jurisdiction over the consent decree); accord Raspa v. Dawkins (In re Dawkins), 546 B.R. 463, 465 (Bankr. M.D. Fla. 2016) (considering allegation of fraud in the procurement of a consent judgment in the context of Rule 60(b) ). Plaintiffs' claim for common law fraud is procedurally improper and thus, pursuant to the Court's inherent authority to manage its docket, the Court dismisses it. See Link v. Wabash R.R. Co., 370 U.S. 626, 630-31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (noting that federal courts possess the inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"). If Plaintiffs intend to maintain any allegations of fraud in the procurement of the Consent Judgment, they should file the appropriate motion in the Original Action.[1]
Although the Court dismisses Plaintiffs' claim for fraud, the Court notes that Plaintiffs' other claims for (I) intentional tortious interference with existing economic relationships; (II) trade libel; (III) common law unfair competition; and (IV) false advertising pursuant to the Lanham Act may continue. In these claims, Plaintiffs do not seek to enforce the Consent Judgment, nor will their possible success on the claims result in the Court *1286 setting aside the Consent Judgment. Instead, these tangentially related actions are properly brought as a separate action. C.f. Woodcock Bros. Transp. Grp. v. Transp. Res., Inc., No. 01 C 8067, 2003 WL 1873928, at *4 (N.D. Ill. Apr. 14, 2003) (noting that even where underlying facts that gave rise to a settlement agreement are related to a new action, new contentions constitute a new claim where the plaintiff does not seek the enforcement of a settlement agreement). In short, the Court dismisses Plaintiffs' claim for fraud but permits their other claims to move forward at this time.
B. Defendants Erroneously Seek Compliance with the Consent Judgment in this Action
In the present action, and in response to Plaintiffs' amended complaint, Defendants filed an Answer wherein it asserted counterclaims for (I) breach of consent judgment, (II) tortious interference with business relations, (III) civil conspiracy, and (IV) false advertising pursuant to the Lanham Act. Like Plaintiffs' allegation of fraud, Defendants' first three claims go directly to Plaintiffs' alleged violation of the Consent Judgment. In other words, the success of any of these three (3) claims results in a finding that Plaintiffs are in violation of the Consent Judgment.
"Precedent dictates that a plaintiff seeking to obtain the defendant's compliance with the provisions of an injunctive order [should] move the court to issue an order requiring the defendant to show cause why he should not be held in contempt and sanctioned for his noncompliance." Wyatt By and Through Rawlins v. Rogers, 92 F.3d 1074, 1078 n.8 (11th Cir. 1996) (citation omitted); see also Newman v. State of Alabama, 683 F.2d 1312, 1318 (11th Cir. 1982), cert. denied, 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 346 (1983) ("if [the plaintiffs] think the State is failing to take the action required by the consent decree and wish the court to intervene, [they] have available a traditional equitable remedy. They can initiate contempt proceedings by moving the court to issue an order to show cause why the State should not be held in civil contempt."). In other words, Defendants in this case should have filed, in the Original Action, a motion to show cause, and Defendants should not have asserted counterclaims for violations of the Consent Judgment. See Kapco Mfg. Co. v. C & O Enters., Inc., 108 F.R.D. 55, 57 (N.D. Ill. 1985) (noting that "insistence on proper procedure is not trivial" as it "is both wasteful and counter-productive to file a new complaint whenever enforcement of a previously-entered consent decree in another case is sought"); accord Figures v. Bd. of Pub. Utils., 967 F.2d 357, 361 (10th Cir. 1992) (finding dismissal of a claim that alleged a violation of a consent decree appropriate because "one could only bring this claim in the original case invoking the court's continuing jurisdiction over that matter"). Thus, pursuant to the Court's inherent authority to manage its docket and achieve the orderly and expeditious disposition of cases, the Court dismisses Defendants' counterclaims for breach of consent judgment, tortious interference with business relations, and civil conspiracy. See Durr v. Adams Bevs., Inc., 710 F. App'x 358, 360 (11th Cir. 2017) (noting that "district courts have the power to manage their dockets" which includes "the inherent ability to dismiss a claim in light of its authority to enforce its orders and provide for the efficient disposition of litigation" and decisions pursuant to this authority are reviewed for abuse of discretion) (citations omitted).
Perhaps most concerning for the Court is that the maintenance of these claims would mean that the Parties may be faced *1287 with inconsistent or contradictory proceedings. For example, if the Court were to find, in this action, that the Consent Judgment was procured by fraud, as Plaintiffs claim, it would be forced to void the Consent Judgment in the Original Action. Principles of judicial economy and procedural fairness mandate that the Court considers all the issues surrounding the Consent Judgment at one time, "thereby avoiding piecemeal litigation and the danger of inconsistent results." Kapco Mfg., 108 F.R.D. at 56.
In sum, the Court dismisses all claims pertaining to the validity and enforcement of the Consent Judgment, including Plaintiffs' claim for common law fraud and Defendants' claims for breach of consent judgment, tortious interference with business relations, and civil conspiracy. The Court finds that it is an inappropriate and inefficient use of judicial resources to allow the Parties to simultaneously litigate these substantially similar claims in two (2) actions. Thus, pursuant to the Court's inherent authority to manage its docket, the Court dismisses these claims without prejudice to the Parties' rights to litigate these issues in the Original Action.
III. Motion to Dismiss Counterclaim
Having dismissed three (3) of Defendants' four (4) asserted counterclaims, the Court turns now to Plaintiffs' Motion to Dismiss the final counterclaim for false advertising pursuant to the Lanham Act. Plaintiffs move to dismiss this counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6).
When considering a 12(b)(6) motion to dismiss, the Court must accept as true the allegations set forth in the complaint drawing all reasonable inferences in the light most favorable to the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ; U.S. v. Stricker, 524 F. App'x 500, 505 (11th Cir. 2013) (per curiam). Even so, a complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955 ); accord Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007).
Further, the complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (citing Twombly, 550 U.S. at 570, 127 S.Ct. 1955 ). Put another way, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This so-called "plausibility standard" is not akin to a probability requirement; rather, the plaintiff must allege sufficient facts such that it is reasonable to expect that discovery will lead to evidence supporting the claim. Id.
Plaintiffs argue that Defendants' counterclaim for false advertising is vague, fails to plead enough facts to satisfy the Iqbal / Twombly plausibility standard, or alternatively, is not actionable. [Doc. 11 at 9]. Defendants respond that they have properly pled a false advertising claim pursuant to the Lanham Act. [Doc. 15 at 21].
"Section 43(a) of the Lanham Act creates a civil remedy for entities injured by their competitor's false or misleading advertising." Phx. of Broward, Inc. v. McDonald's Corp., 441 F. Supp. 2d 1241, 1246 (N.D. Ga. 2006) (internal quotations omitted). The statute creates liability for the use in commerce of any "false or misleading description of fact, or false or misleading representation of fact which in commercial advertising or promotion, misrepresents *1288 the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). To succeed on this claim, Defendants must show: "(1) [Plaintiffs'] advertisements are false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented advertisements affect interstate commerce; and (5) [Defendants have] been or [are] likely to be injured as a result of the false advertising." Phx. of Broward, Inc., 441 F. Supp. 2d at 1246 (citing Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1247 (11th Cir. 2002) ). The Court will discuss each element in turn.
A. Element #1 - False or Misleading Advertisement
The first element of a false advertising claim under the Lanham Act is whether the advertisement is literally false, or whether the advertisement is literally true, but misleading. Osmose, Inc. v. Viance, LLC, 612 F.3d 1298, 1308 (11th Cir. 2010). To determine whether an advertisement is literally false or misleading, courts analyze the message conveyed in full context, and also view the face of the statement in its entirety. Id. Here, Defendants allege two (2) ways in which Plaintiffs' advertising of the product "Stride" is literally false. First, Defendants allege that Plaintiffs either falsely advertised the product on the M&N website by claiming that the product contains GABA and Phenibut, or falsely advertised the product on the product's packaging, which does not identify GABA as an ingredient. Counterclaim ¶ 74. Second, Defendants allege that while Plaintiffs advertise that "Stride" is half the cost of competing products, the difference in cost is not so extreme. Counterclaim ¶¶ 72-73.
The Court finds these allegations sufficient to satisfy the first element of a false advertising claim pursuant to the Lanham Act. Defendants allege that Plaintiffs' advertisements are literally false concerning the product's ingredients and price. Plaintiffs' arguments to the contrary are not persuasive and go to the merits of Defendants' claim. But it is well established that a court reviewing a motion to dismiss for failure to state a claim is testing the sufficiency of the pleading and not the merits of the case. Polsinelli PC v. Genesis Biosciences, Inc., 1:14-CV-00873-ELR, 2015 WL 12850574, at *2 (N.D. Ga. May 22, 2015) ("Even if it is extremely unlikely that a party will recover, a pleading may nevertheless survive a motion to dismiss for failure to state a claim, and a court reviewing such a motion should bear in mind that it is testing the sufficiency of the pleading and not the merits of the case.") (citations omitted). Accordingly, the Court finds that Defendants have sufficiently pled the first element.
B. Element #2 - Deception, or Capacity to Deceive, Consumers
The second element of the prima facie case for false advertising under the Lanham Act is consumer deception. Osmose, Inc., 612 F.3d at 1318-1319. Whether an advertisement is literally false or true but misleading affects what must be proven with respect to consumer deception to prevail on a claim of false advertising under the Lanham Act. Id. at 1319. If the court finds that an advertisement is literally false, then evidence of consumer deception is not required. Id.; see also Trilink Saw Chain, LLC v. Blount, Inc., 583 F. Supp. 2d 1293, 1320 (N.D. Ga. 2008) (noting that many courts - including the Eleventh Circuit - routinely presume that *1289 literally false advertising actually deceives consumers) (citing Johnson & Johnson Vision Care, 299 F.3d at 1247 ). Because Defendants allege that Plaintiffs' advertisements are literally false, Defendants are not required to allege evidence of consumer deception and thus, this element is satisfied. WIKA Instrument I, LP v. Ashcroft, Inc., No. 1:13-CV-43-CAP, 2013 WL 12061904, at *5 (N.D. Ga. July 3, 2013) (noting that because the plaintiff had alleged that advertising materials were literally false, it was not required to plead consumer deception).
C. Element #3 - Materiality
The third element of a claim of false advertising under the Lanham Act is materiality, which must be established even though Defendants allege that Plaintiffs' advertisements are literally false. Osmose, Inc., 612 F.3d at 1319. To establish the materiality element, Defendants must properly allege that Plaintiffs' deception is likely to influence the purchasing decision of consumers. Id. This requirement "is based on the premise that not all deceptions affect consumer decisions." PHA Lighting Design, Inc. v. Kosheluk, No. 1:08-cv-01208-JOF, 2010 WL 1328754, at *7 (N.D. Ga. Mar. 30, 2010) (citing North Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1226 (11th Cir. 2008) ).
Here, Defendants plainly allege that Plaintiffs' deception "had a material effect on purchasing decisions." Counterclaim 76. This Court, and others, have previously found such an allegation sufficient. See Brookwood Funding, LLC v. Avant Credit Corp., No. 1:14-CV-2960-SCJ, 2015 WL 11504556, at *7 (N.D. Ga. July 28, 2015) (finding that the plaintiff demonstrated materiality because the plaintiff alleged that "Defendants' false advertisements have had a material effect on the purchasing decisions of prospective consumers ...."); Aeropost Int'l Servs. v. Aerocasillas, S.A., No. 09-23437-CIV-MORENO, 2011 WL 13174672, at *9 (S.D. Fla. Mar. 31, 2011) (finding that plaintiff satisfied the materiality element because the plaintiff plainly alleged that the defendants' deceptive and false advertising had a "material effect" on customers' purchasing decisions). Thus, Defendants have sufficiently pled the third element.
D. Elements #4 & #5 - Interstate Commerce and Injury
The final two (2) elements to support a claim for false advertising pursuant to the Lanham Act are that the misrepresented products affect interstate commerce and that Defendants have been or are likely to be injured as a result of the false advertising. Phx. of Broward, Inc., 441 F. Supp. 2d at 1246. Plaintiffs do not challenge these elements, and, based on the Court's review of the counterclaim, the Court finds that Defendants have pled sufficient facts to establish each of these elements. See Counterclaim ¶¶ 77-78.
In sum, the Court finds that Defendants' have pled enough factual matter to survive the motion to dismiss stage. Therefore, the Court denies Plaintiffs' motion to dismiss Defendants' false advertising counterclaim.
IV. Motion to Join Additional Party as Counterclaim Defendant
Because the Court determines that one of Defendants' counterclaims may proceed, the Court now addresses Defendant Evol's Motion to Join Additional Party as Counterclaim Defendant. [Doc. 9]. In the motion, Defendant Evol seeks to join Charles Mark Ramsey, managing member of Plaintiff M&N Distributing, as a counterclaim defendant pursuant to Federal Rule of Civil Procedure 20(a).
*1290 With regard to the joinder of defendants, Rule 20(a)(2) provides as follows:
Persons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.
Additionally, the Supreme Court has instructed the lower courts to employ a liberal approach to permissive joinder of claims and parties in the interest of judicial economy, explaining that "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." United Mine Workers v. Gibbs, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). When evaluating the propriety of a specific instance of joinder, courts "assess the facts of each case individually to determine whether joinder is sensible in light of the underlying policies of permissive joinder." Clemons v. Delta Airlines, No. 1:13-cv-0048-RLV-AJB, 2013 WL 11328333, at *5 (N.D. Ga. Oct. 7, 2013) (quotation omitted). The Eleventh Circuit has held that the "underlying purpose of joinder ... is to 'promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits.' " Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002) (quoting Alexander v. Fulton Cty., Georgia, 207 F.3d 1303, 1323 (11th Cir. 2000), overruled on other grounds, 338 F.3d 1304 (11th Cir. 2003) (en banc)).
The Court finds that joinder is appropriate in this case. Defendant Evol asserts that Mr. Ramsey is jointly and severally liable for Plaintiffs' conduct in this case because he participated in the false advertising for the product "Stride. [Doc. 9 at 1-2]. Thus, it follows that identical or similar facts form the basis of Defendants' claim against Plaintiffs and Mr. Ramsey. Accordingly, Defendants' Motion to Join Additional Parties meets the requirements of Rule 20(a)(2).
Plaintiffs argue against joinder stating that Defendants' false advertising claim is not properly pled, and that venue is improper as to Mr. Ramsey. The Court is not convinced. First, as discussed supra , the Court finds that Defendants have sufficiently pled their false advertising claim. Second, as to Plaintiffs' argument concerning venue, Plaintiffs support it with no authority and this issue has not been fully briefed. Thus, the Court will not deny joinder based on this argument.
V. Summary
In sum, after dismissal of several of the Parties' claims in this action so that they may be properly litigated in the Original action, an assessment of Plaintiffs' motion to dismiss Defendants' counterclaim, and consideration of Defendants' motion to join counterclaim defendant, the Court dismisses the following claims: Plaintiffs' claim for fraud; Defendants' counterclaim for breach of consent judgment; Defendants' counterclaim for tortious interference with business relations; and Defendants' counterclaim for civil conspiracy. The Court joins Charles Ramsey as a Counterclaim Defendant and finds that Defendants' counterclaim for false advertising may proceed.
VI. Conclusion
Accordingly, the Court DISMISSES WITHOUT PREJUDICE Plaintiffs' Count V for Common Law Fraud and DISMISSES WITHOUT PREJUDICE Defendants' Counterclaims for breach of consent judgment, tortious interference with business relations, and civil conspiracy.
*1291 The Court DENIES Plaintiffs' Motion to Dismiss Evol's Counterclaims as to the remaining counterclaim for false advertising pursuant to the Lanham Act. [Doc. 11]. Finally, the Court GRANTS Defendants' Motion to Join Additional Party as Counterclaim Defendant [Doc. 9] and JOINS Charles Ramsey as a Counterclaim Defendant in this action. The Court DIRECTS Plaintiffs to file an answer to Defendants' remaining counterclaim for false advertising within fourteen (14) days of the date of entry of this order.
SO ORDERED , this 17th day of June, 2019.

Indeed, Plaintiffs have already indicated in their response to Evol's Motion for Civil Contempt filed in the Original Action that they believe the Consent Judgment was procured by fraud. Original Action [Doc. 46].